391 S.E.2d 371

**Willis LIVENGOOD, as Administrator of the Estate of Deborah V. Livengood**

v.

**Richard S. KERR, M.D.; Robert Greco, M.D.; and Gynecological & Obstetrical Associates, Inc., a Corporation.**

No. 19129.

Supreme Court of Appeals of West Virginia.

March 22, 1990.

William E. Galeota, Steptoe & Johnson, Morgantown, for Richard S. Kerr, M.D., Robert Greco, M.D., Gynecological & Obstetrical Associates.

David L. Solomon, Michael L. Solomon, Solomon & Solomon, Morgantown, William S. Druckman, James A. McKowen, Hunt & Wilson, Charleston, for Willis Livengood.

PER CURIAM:

This is an appeal by the appellants, Richard S. Kerr, M.D., and Robert Greco, M.D., from a final order of the Circuit Court of Monongalia County entered on November 21, 1988, which set aside a verdict in favor of the appellants and granted a new trial. The appellants contend that: (1) the affidavits of the jurors should not have been considered for the purpose of impeaching the verdict; (2) there was no concealment by one of the jurors on *voir dire;* (3) the jurors' claim that they were confused about the verdict form is intrinsic to the deliberative process and cannot be used to impeach the verdict; and (4) there was sufficient evidence to support the jury's verdict. We agree, and accordingly, the order of the trial court is reversed.

The appellee, Willis Livengood, initiated an action against the appellants alleging that they were negligent in their failure to diagnose and treat his wife's breast cancer in a timely manner. Mrs. Livengood's breast cancer metastasized to her liver and bone, and she died before the case was tried.

The trial began on December 14, 1987, and the case was submitted to the jury on December 18, 1987. The following day, the jury returned a verdict finding that the appellants had not been negligent.

On December 23, 1987, the appellee filed a motion to set aside the jury verdict and to award a new trial on all issues pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure.* The appellee contended that the verdict should be set aside and that a new trial should be granted on the grounds that: (1) the jury verdict was contrary to the evidence; (2) one juror was disruptive and did not allow the other jurors to deliberate; and (3) the jury was confused by the verdict form provided by the court. In support of the motion, the appellee submitted the affidavits of four of the six jurors. The appellants filed a brief in opposition to the appellee's post-trial motion.

On February 26, 1988, the appellee filed an amended motion to set aside the jury verdict. The appellee alleged that one of the jurors, Robert Ozero Bowsher, while under oath on *voir dire* by both the court and counsel, concealed relevant information

regarding a material fact which would have lead to his disqualification. Although Mr. Bowsher had disclosed that one of the appellants had treated his wife the previous summer when she had a miscarriage, he did not reveal that the other appellant had delivered his daughter, born of a previous marriage twelve years earlier. The appellant filed a reply brief in opposition to the appellee's amended post-trial motion.

By order entered on November 21, 1988, the trial court set aside the verdict and granted a new trial on the grounds that: (1) four of the six jurors were unable to meaningfully participate in the deliberations because of the conduct of one juror; (2) Mr. Bowsher did not disclose his relationship with one of the appellants; (3) the verdict form mislead the jury; and (4) the verdict was not supported by the evidence. It is from that order that the appellant appeals.

I

The appellants first assert that the trial court erred in allowing the appellee to impeach the jury verdict with the jurors' affidavits after the jurors had been individually polled and affirmed their verdict. The appellee contends that the extraordinary circumstances of this case qualify it as an exception to the general rule that a jury verdict may not ordinarily be impeached on matters which inhere in the verdict.

We stated the general rule that impeachment may not be permitted on matters intrinsic to the jury's deliberative process in syllabus point 1 of *State v. Scotchel*, 168 W.Va. 545, 285 S.E.2d 384 (1981): "A jury verdict may not ordinarily be impeached based on matters that occur during the jury's deliberative process which matters relate to the manner or means the jury uses to arrive at its verdict." *See also* syllabus point 3 of *State v. Banjoman*, 178 W.Va. 311, 359 S.E.2d 331 (1987).

However, we recognized in syllabus point 2 of *Scotchel* that the verdict may be subject to impeachment when the alleged misconduct is extrinsic to the jury's deliberative process: "Courts recognize that a jury verdict may be impeached for matters of misconduct extrinsic to the jury's deliberative process."

The affidavits in the instant case concern matters that occurred during the jury's deliberations. The affidavits generally allege that the jurors had difficulty discussing the evidence because of the disruptive behavior of one of the jurors, Mr. Bowsher. These jurors asserted in the affidavits that they returned the wrong verdict and that a new trial should be granted. Yet, in response to questioning by the judge in open court, the jurors indicated that they each concurred in the verdict.[1] Accordingly, we find that the trial court should not have considered the jurors' allegations concerning Mr. Bowsher's conduct as grounds for impeaching the verdict since these allegations concern matters that occurred during the jury's deliberations. *See State v. Dudley*, 178 W.Va. 122, 358 S.E.2d 206, 211 (1987).[2]

II

The appellants next assign as error the trial court's finding that Mr. Bowsher had falsely responded on *voir dire*. The appellee contends that Mr. Bowsher's failure to disclose his relationship with one of the appellants during *voir dire* was sufficient cause to set aside the jury's verdict and grant a new trial.

We explained in *West Virginia Human Rights Comm'n v. Tenpin Lounge, Inc.*, 158 W.Va. 349, 357, 211 S.E.2d 349, 354 (1975) that to warrant a new trial on account of alleged disqualification or misconduct of a juror, the moving party has the burden of proving that: (1) the juror was disqualified; (2) the moving party was

---

**1.** Although the appellee indicates on appeal that the jurors were never questioned regarding their verdict, the appellee discusses the court's questioning of the jurors following the verdict in the appellee's memorandum of law in support of the motion for a new trial.

**2.** We noted in *Scotchel* that the rules on impeachment of a jury verdict have been generally applied to both civil and criminal cases. 168 W.Va. at 548–49 n. 3, 285 S.E.2d at 387 n. 3.

diligent in his or her efforts to ascertain the disqualification; and (3) prejudice resulted from the juror's participation. We also pointed out in *McGlone v. Superior Trucking Co., Inc.,* 178 W.Va. 659, 669, 363 S.E.2d 736, 746 (1987) that "a new trial will be granted only when the prospective juror's willful or inadvertent failure, during voir dire, to disclose relevant information suggests actual or probable bias or prejudice, not merely because the complaining party has been, in effect, denied a peremptory strike of a particular prospective jury." (citation omitted).

■ Furthermore, this Court has recognized that the fact a prospective juror has a physician-patient relationship with a party to litigation does not *per se* disqualify him or her from sitting in the case. In syllabus point 2 of *West Virginia Dep't of Highways v. Fisher,* 170 W.Va. 7, 289 S.E.2d 213 (1982), we stated:

> Where a physician-patient relationship exists between a party to litigation and a prospective juror, although such prospective juror is not disqualified *per se,* special care should be taken by the trial judge to ascertain, pursuant to *W.Va. Code,* 56–6–12 (1931), that such prospective juror is free from bias or prejudice.

In the instant case, the trial judge conducted extensive *voir dire* and exercised special care in ascertaining whether any of the jurors were free from bias or prejudice.[3] During questioning by the court, Mr. Bowsher disclosed that his wife was a patient of Dr. Kerr the previous summer when she suffered a miscarriage. When questioned by the court regarding his other children, Mr. Bowsher stated that he believed Louise VanRiper had delivered his children but that he was not sure. After the jury entered its verdict, however, the appellee introduced evidence to show that Mr. Bowsher's daughter, who was born of a previous marriage in July of 1975, had been delivered by Dr. Greco.

■ Here, Mr. Bowsher disclosed that his current spouse had recently been a patient of Dr. Kerr when she suffered a miscarriage. It appears, however, that Mr. Bowsher was unable to recall that Dr. Greco had delivered his daughter from a previous marriage twelve years earlier. Yet, the likelihood that Mr. Bowsher was biased as a result of the physician-patient relationship between his former wife and Dr. Greco seems much more remote than the possibility that he was biased because of the recent physician-patient relationship between his current wife and Dr. Kerr. Thus, we do not believe that Mr. Bowsher's failure to disclose his former wife's physician-patient relationship with Dr. Greco twelve years earlier demonstrates actual or probable bias or prejudice.

### III

The appellants' third assignment of error concerns the trial court's finding that the jury's verdict was in part based upon a misunderstanding of the law and the evidence in the case. The appellee contends that the verdict form was misleading and that the jurors believed that finding the appellants negligent would be the same as finding that the appellants "killed" Mrs. Livengood.

In syllabus point 3 of *Scotchel, supra,* we stated: "Ordinarily, a juror's claim that he was confused over the law or evidence and therefore participated in the verdict on an incorrect premise is a matter that inheres in or is intrinsic to the deliberative process and cannot be used to impeach the verdict."

■ Here, the affidavits indicate that four jurors believed that if they found the appellants negligent, that would be the same as finding that they killed Mrs. Livengood and could be subject to a criminal prosecution. These affidavits, however, concern matters that are intrinsic to the

---

3. The court also questioned Mr. Bowsher regarding whether he would discuss the case with anyone. Mr. Bowsher stated that he would not discuss the case with anyone, including his wife. The court even warned Mr. Bowsher "that Judge DePond one time fined a woman $500[.]" Mr. Bowsher again stated that he would not discuss the case with anyone and the trial judge responded, "I believe you. I believe you."

deliberative process and cannot be used to impeach the verdict.

## IV

■ Finally, the appellants contend that the trial court erred by concluding that the jury verdict was not supported by credible evidence. The appellee maintains that overwhelming evidence was introduced to show that the appellants were negligent in their treatment of the appellee's decedent.

The appellee introduced the testimony of Dr. Guy Robbins, Dr. Herbert Allen Goldfarb, and Dr. Richard Stein. Dr. Robbins, a surgical oncologist, testified that he believed the appellants deviated from the standard of care in their treatment of Mrs. Livengood. Dr. Robbins believed Dr. Kerr deviated from the standard of care in the manner in which he conducted his one or two minute palpation of the breast, on March 19, 1985, and by failing to have a biopsy of the lump performed on September 5, 1985. Dr. Robbins also believed that Dr. Greco had deviated from the standard of care in failing to have Mrs. Livengood come in for a follow-up visit after his examination of her on September 28, 1984.

Dr. Goldfarb also believed that Dr. Kerr had deviated from the standard of care by failing to have Mrs. Livengood come in for a follow-up examination within a month or two, and in failing to have a biopsy of the breast performed at an earlier date.[4] Dr. Goldfarb, however, was not certain whether Dr. Greco had deviated from the standard of care in his treatment of Mrs. Livengood.

Finally, Dr. Stein testified that he believed at the time Mrs. Livengood first sought treatment, the cancer had not spread. Dr. Stein testified that, in his opinion, the cancer had spread by the time the lump was diagnosed. Therefore, Dr. Stein testified that he believed the appellants' failure to diagnose the breast cancer increased Mrs. Livengood's risk of harm.

Dr. Lorraine Withersty testified on behalf of the appellants and stated that she did not believe either Dr. Greco or Dr. Kerr had deviated from the standard of care. Dr. Withersty testified that the record showed that a mammogram was performed following Mrs. Livengood's examination by Dr. Greco and that the mammogram was negative. Dr. Withersty believed that at the time Dr. Greco examined Mrs. Livengood, she had fibrocystic breast disease. Dr. Withersty also testified that Dr. Kerr recommended that Mrs. Livengood perform regular self-breast examinations, and that once he found a significant change from his previous examination, Dr. Kerr referred her to a general surgeon.

Dr. E. Schrae LaPlante, the surgeon who performed the biopsy on Mrs. Livengood, also testified on behalf of the appellants. Dr. LaPlante stated that he had scheduled Mrs. Livengood for a biopsy but that it had been postponed at her request. Prior to the biopsy, Dr. LaPlante found liver enzyme abnormalities and believed that Mrs. Livengood may have gallbladder disease and fibrocystic disease of the breast. Following the biopsy, Dr. LaPlante testified that he realized her liver abnormalities were related to the lump in her breast.

Both of the appellants also testified and explained the manner in which they treated Mrs. Livengood.

Recognizing that conflicting medical testimony was presented to the jury, we believe that the issues of whether the appellants deviated from the standard of care and whether their failure to diagnose Mrs. Livengood's breast cancer increased her risk of harm were for the jury to decide. We stated in syllabus point 2 of *French v. Sinkford*, 132 W.Va. 66, 54 S.E.2d 38 (1948): "Where, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong." *See also* syl. pt. 3, *Pinnacle Mining Co. of Northern W.Va. v. Duncan Aircraft Sales of Florida, Inc.*, 182 W.Va. 307, 387 S.E.2d 542 (1989); syl. pt. 2, *Dustin v. Miller*, 180 W.Va. 186, 375 S.E.2d 818 (1988); syl. pt. 2, *Rhodes v. National*

---

**4.** A video deposition of Dr. Goldfarb was shown to the jury.

*Homes Corp.*, 163 W.Va. 669, 263 S.E.2d 84 (1979).

Accordingly, for the reasons set forth herein, we reverse the order of the Circuit Court of Monongalia County and reinstate the jury verdict in favor of the appellants.

Reversed.