415 S.E.2d 267

**Christine M. McNEELY and Douglas M. McNeely, Plaintiffs Below, Appellees,**

v.

**J.C. FRICH, Jr., M.D., Defendant Below, Appellant.**

No. 20278.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 22, 1992.

Decided Feb. 27, 1992.

James C. West, Jr., West & Jones, Clarksburg, for appellees.

Herbert G. Underwood, Matthew J. Mullaney, Steptoe & Johnson, Clarksburg, for appellant.

PER CURIAM:

This case involves an appeal by J.C. Frich, Jr., M.D., the defendant below, from the January 30, 1991, order of the Circuit Court of Monongalia County in which the trial court set aside a jury verdict in favor of the defendant and granted the plaintiffs a new trial on the ground that the jury verdict was "contrary to all credible evidence in the case." For the reasons stated below, we agree with the petitioner and order that the January 30, 1991, order of the Circuit Court of Monongalia County be reversed and the jury verdict reinstated.

The plaintiff below, Mrs. Christine McNeely, was diagnosed as having breast cancer. Rather than having a modified radical mastectomy, Mrs. McNeely chose to have a lumpectomy and an excision of lymph nodes at a Pennsylvania hospital. Surgery was performed on November 5, 1986. In order to destroy any other tumors that might exist, Mrs. McNeely was referred for radiation therapy. For convenience, she elected to receive the treatment at the West Virginia University Health Sciences Center in Morgantown. Dr. Frich, a radiation oncologist, began her treatment on January 9, 1987. The radiation therapy was to occur over twenty-five consecutive working days, with each treatment consisting of one hundred rads of radiation being delivered to the tumor site from one angle and another one hundred rads being delivered from another angle. Prior to the commencement of radiation treatment, Dr. Frich discussed potential reactions to radiation with Mrs. McNeely. He also expressly counseled her that she should consider again a modified mastectomy rather than radiation. However, Mrs. McNeely chose to continue with radiation, noting in her journal, which she kept showing the daily history of her treatment, that "Dr. Frich warned me of the complications that are possible. Lung damage could be up to 10%, heart damage rare, severe burn in a small percent, but most likely a very bad sunburn. Skin may feel leathery after treatments. The rads will total 5,000, done in 25 treatments. Either have the treatments or the breast could be removed. I went for the treatments."

The treatments proceeded as expected until midway through the course, when her breast became pink and tender, which she reported to Dr. Frich. Dr. Frich apparently assured Mrs. McNeely that the redness and tenderness was typical. Thereafter, on either the last day of treatment or the next to last day of treatment, a crack developed on the underside of the breast at the chest wall, approximately one inch long and approximately one-fourth inch wide. Despite this crack, the treatment continued that day, and Dr. Frich ordered a prescription for acid mantle cream for the condition.

Mrs. McNeely noted that Dr. Frich had not even examined the crack when prescribing the medication.

Over the next several days, the crack grew, and upon reporting this to Dr. Frich, Mrs. McNeely underwent examination. When it became clear that the acid mantle cream was not working, Dr. Frich changed the medication to gentian violet. At that time, Mrs. McNeely claims that the crack was approximately one and one-half inches up the breast and across the bottom. Treatment with gentian violet continued for approximately nine months, after which time she asked Dr. Frich for a referral to another physician. On November 19, 1987, Dr. Frich suggested that Mrs. McNeely be examined by a doctor whom he knew at the Allegheny General Hospital in Pittsburgh, who would use a hyperbaric oxygen treatment. Mrs. McNeely chose not to undergo the hyperbaric oxygen treatment and rather was seen by I.W. Goldfarb, M.D., a physician at the West Penn Burn Center. Dr. Goldfarb examined her on November 25, 1987, and again approximately one week later. Dr. Goldfarb prescribed silvadene cream and instructed her to use gauze bandages instead of telfa so the wound could breathe. Dr. Goldfarb was not called by the plaintiffs to testify at trial.

Mrs. McNeely claims that it was not until this point that the wound started to heal. The breast was essentially healed by February, 1988, although it did break open once later. However, she contends that she was left with a left breast which was smaller in size by at least half than when she started treatment with Dr. Frich, and was massively scarred.

Shortly thereafter, Mrs. McNeely filed suit, contending that Dr. Frich was negligent in the technique utilized in administering the radiation therapy and, further, was negligent in the treatment which he rendered to the burn after it occurred.

The case went to trial on November 19, 20, and 21, 1990. At trial, the plaintiff presented their expert witness, Dr. Ray A. Harron, a semi-retired radiation oncologist. Dr. Harron had operated his own radiology clinic in Bridgeport, West Virginia, for many years. In essence, Dr. Harron pointed to three areas in which he believed Dr. Frich deviated from the standard of care:

1. Dr. Frich's failure to use a bolus or a wedge during the radiation treatment to absorb excess radiation and to avoid damage in other non-necessary areas;

2. The failure of Dr. Frich to rethink his treatment regimen and stop the radiation when midway through the treatment, the skin condition was what it should be at the end of the treatment; and

3. When it became apparent that there was a serious burn developing, burn treatment should have been pursued more vigorously.

The defendant testified on his own behalf and also presented the testimony of Sheila Hodgson, M.D., a radiation oncologist in active practice at Ohio State University. Without going into great detail, Dr. Hodgson's testimony rebutted that of Dr. Harron, stating that a bolus was not necessarily to be used when treating a breast cancer patient with high energy radiation. She also testified that the color of the breast halfway through the treatment was as expected and seen frequently. Dr. Hodgson stated that the reddening of Mrs. McNeely's breast during the twenty-five days of therapy was appropriate and consistent with the maximum therapeutic results and did not mandate reassessment halfway through the treatment.

Finally, there was testimony by both sides regarding the treatment of the crack wound under the breast. However, the plaintiffs below failed to call Dr. Goldfarb, the burn specialist physician who treated Mrs. McNeely's wound after Dr. Frich. Moreover, Dr. Harron never claimed that the silvadene treatment constituted the standard of care treatment for such a wound, and Dr. Hodgson then testified that the aggressive treatment suggested by Dr. Harron would have been counterproductive. She concluded that Dr. Frich's treatment of the wound was "compatible with reasonable standards of care."

In December, 1989, the jury returned a verdict for the defendant, Dr. Frich, and

against the McNeelys. On January 30, 1990, the circuit court judge ruled that the jury verdict be set aside and a new trial granted because the verdict "was contrary to all credible evidence in the case." The defendant appealed that ruling to this Court.

 An essential element of our judicial system is the right of a party, in most cases, to request a jury of his or her peers to render a verdict based upon the evidence and testimony presented. Because of the jury's unique ability to see the evidence and judge the demeanor of the witnesses on an impartial basis, a jury verdict is accorded great deference. It is the province of the jury to weigh the testimony and to resolve questions of fact when the testimony conflicts:

" 'A jury is better able to judge of the circumstances of a case, the weight of the testimony, and the peculiar hardships and aggravations attendant upon an injury, and its verdict for damages for personal injury, which is not so excessive as to indicate, as a matter of law, passion, prejudice, partiality, mistake, or lack of due consideration, will not be set aside by this Court on that ground.' Syllabus, *Williams v. Penn Line Service, Inc.*, 147 W.Va. 195, 126 S.E.2d 384 (1962)." Syllabus point 14, *Abdulla v. Pittsburgh and Weirton Bus Co.*, W.Va. [158 W.Va. 592, 213 S.E.2d 810] (1975).

Syl. pt. 19, *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975).

 The appellee's contention that the judge in this case was better able to reach the correct decision because of the conflicting testimony is meritless. A jury's verdict is accorded great deference when it involves the jury weighing conflicting evidence:

"When a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it." Point 4, Syllabus, *Laslo v. Griffith*, 143 W.Va. 469, 102 S.E.2d 894.

Syl. pt. 2, *Walker v. Monongahela Power Company*, 147 W.Va. 825, 131 S.E.2d 736

(1973). While we recognize that a trial court judge is not merely "a referee," the judge can only set aside a jury verdict and award a new trial when it is "plainly wrong even if it is supported by some of the evidence...." Syllabus, *Cook v. Harris*, 159 W.Va. 641, 225 S.E.2d 676 (1976). In reviewing this jury verdict, all reasonable and legitimate inferences must be considered in favor of the defendant, Dr. Frich:

In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.

*Walker*, 147 W.Va. 826, 131 S.E.2d at 737 syl. pt. 3.

Recently, we discussed a similar situation which involved a suit brought by the plaintiff alleging a failure to diagnose breast cancer and whether it increased her risk of harm. In *Livengood v. Kerr*, 182 W.Va. 681, 391 S.E.2d 371 (1990), the jury returned with a verdict in favor of the defendant physician, and the trial court set aside that verdict. This Court reversed the trial court and reinstated the jury verdict:

Recognizing that conflicting medical testimony was presented to the jury, we believe that the issues of whether the appellants deviated from the standard of care and whether their failure to diagnose Mrs. Livengood's breast cancer increased her risk of harm were for the jury to decide. We stated in syllabus point 2 of *French v. Sinkford*, 132 W.Va. 66, 54 S.E.2d 38 (1948): "Where, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong." *See also* syl. pt. 3, *Pinnacle Mining Co. of Northern W.Va. v. Duncan Aircraft Sales of Florida, Inc.*, 182 W.Va. 307, 387 S.E.2d 542 (1989); syl. pt. 2, *Dustin v. Miller*, 180 W.Va. 186, 375 S.E.2d 818 (1988); syl. pt. 2, *Rhodes v. National*

*Homes Corp.*, 163 W.Va. 669, 263 S.E.2d 84 (1979).

*Id.* 182 W.Va. at 685–686, 391 S.E.2d at 375–76.

■ Like our opinion in *Livengood,* the evidence below does not show that the jury was plainly wrong. While conflicting evidence was presented by both parties, such is the case in most trials. Both experts presented by the parties were credible witnesses and were vigorously cross-examined by the opposing party. After reviewing all reasonable and legitimate inferences in the defendant's favor, we cannot conclude, as the trial court did, that the jury verdict for the defendant was "contrary to all credible evidence in this case." By affirming the trial judge's order setting aside the verdict in this case, we would be permitting the judge to intrude upon the exclusive province of the jury to weigh and decide questions of fact. We refuse to permit this intrusion where the facts do not warrant such an action. Thus, the question of whether the defendant violated the standard of care was properly left to the jury for decision.

Therefore, we reverse the January 30, 1991, order of the Circuit Court of Monongalia County and reinstate the jury verdict acquitting Dr. Frich of responsibility for Mrs. McNeely's injuries.

Reversed.