465 S.E.2d 246

**Pamela J. VOELKER, Administratrix of the Estate of Blake Andrew Weisenburg, Plaintiff Below, Appellant,**

v.

**The FREDERICK BUSINESS PROPERTIES COMPANY and Vincent Joseph Root, Sr., Defendants Below, Appellees.**

No. 22865.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 13, 1995.

Decided Nov. 17, 1995.

D. Michael Burke, Burke & Schultz, Martinsburg, for Appellant.

Robert B. Keddie, Keddie & Keddie, Bridgeville, Pennsylvania, for, Appellee Vincent Joseph Root, Sr.

Donna M. Robinson, Nashville, Tennessee, for Appellee Frederick Business Properties Company.

McHUGH, Chief Justice:

The appellant, Pamela J. Voelker, appeals the August 24, 1994 order of the Circuit Court of Berkeley County which denied her motion for a new trial. The appellant, as an administratrix, sought to recover damages for the wrongful death of her son who was almost six years old at the time of his death. The jury returned a verdict for the appellees, Frederick Business Properties Co. and Vincent Joseph Root, Sr. For reasons explained below, we affirm the circuit court's order.

I

On May 3, 1991, the appellant's son was standing at a school bus stop located near an apartment complex with an adult, Glenda Smith, and another child.[1] As the appellee, Vincent Root, approached the school bus stop, the appellant's son started to run out into the street in front of Mr. Root's vehicle.

Mr. Root brought his vehicle to a complete stop without hitting the appellant's son.

Mr. Root then motioned for Ms. Smith and the two children to cross the street. Ms. Smith declined to cross the street. Mr. Root testified that he understood Ms. Smith to be responding on behalf of herself and the two children.

Thereafter, Mr. Root started to move his truck when he felt a bump. Upon stopping his truck and exiting the vehicle, Mr. Root saw that his left front tire had run over the appellant's son causing fatal injuries to his abdomen and thoracic regions.

II

The primary issue in this case concerns the admission of evidence of a beneficiary's relationship with a decedent in an action brought for the wrongful death of the decedent.[2] More specifically, in the case before us, the appellant challenges the admission of evidence regarding a mother's character, parental expertise, and private personal relationships in an action brought for the wrongful death of her child.

The appellant maintains that the admission of such evidence is not relevant pursuant to *W.Va.R.Evid.* 401 and 402 when determining whether a wrongful death occurred, and even if it would be relevant, such evidence should be excluded pursuant to *W.Va.R.Evid.* 403 because its probative value is substantially outweighed by the danger of unfair prejudice. Conversely, the appellees contend that such evidence in the case before us is relevant when determining whether damages for

---

1. There is some dispute as to what occurred on the day the appellant's son died; however, it is unnecessary to the resolution of the issues raised on appeal for this Court to address the factual disputes. Thus, we will address the facts "fairly arising from the evidence in favor of the party for whom the verdict was returned[:]"

' "In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true." Syllabus point 3, *Walker v. Monongahela Power Company*, 147 W.Va. 825, 131 S.E.2d 736 (1963).' Syl. pt. 3, *McNeely v. Frich*, 187 W.Va. 26, 415 S.E.2d 267 (1992).

Syl. pt. 7, *Johnson v. General Motors Corporation*, 190 W.Va. 236, 438 S.E.2d 28 (1993).

2. The appellant frames the issue much more narrowly: "The Circuit Court **ERRED** when it permitted William Weisenberg to testify that he and the Plaintiff, Pamela Voelker[,] used marijuana, cocaine and other drugs at their home while their children were present, prior to January, 1989[.]" However, in the discussion which followed the issue in the appellant's brief, the appellant complains about the admission of other evidence such as evidence that plaintiff's fiance physically disciplined the decedent. Thus, we find it more appropriate to reframe the issue in order to address all of the appellant's contentions.

"[s]orrow, mental anguish, and solace ..." should be awarded in a wrongful death action. *See W.Va.Code*, 55–7–6 [1989].[3] Furthermore, the appellees assert that the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice.

At common law there was no action for damages arising out of a wrongful death. *See Dunsmore v. Hartman*, 140 W.Va. 357, 359, 84 S.E.2d 137, 138 (1954). The wrongful death action was first created by an English statute known as Lord Campbell's Act which this State essentially adopted in 1863. *Id.* Today the right to bring a wrongful death action is codified at *W.Va.Code*, 55–7–5 [1931] which states, in relevant part:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the. act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person, who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured[.]

*W.Va.Code*, 55–7–6 [1989] provides, *inter alia*, who may bring an action for wrongful death, the damages which may be collected, and how the damages are to be distributed. More specifically, *W.Va.Code*, 55–7–6(c)(1) [1989] states:

(c)(1) The verdict of the jury shall include, but may not be limited to, damages for the following: (A) *Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent;* (B) compensation for reasonably expected loss of (i) income of the decedent, and (ii) services, protection, care and assistance provided by the decedent; (C) expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death; and (D) reasonable funeral expenses.

(emphasis added). The question, in the case before us, is whether evidence regarding the relationship between a beneficiary and the decedent is relevant in determining whether damages should be awarded for "[s]orrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent[.]" *Id.*

In essence, the appellant argues that any evidence regarding the bad character of the plaintiff beneficiary or her poor relationship with the decedent is irrelevant in a wrongful death action. The appellant asserts such evidence is prejudicial in that the jury may choose to not award damages solely because of the bad character of the plaintiff beneficiary or the poor relationship with the decedent and ignore the evidence which clearly shows that the defendant's wrongful act, neglect, or

---

**3.** *W.Va.Code*, 55–7–6 was amended in 1992; however, the amendment does not affect the discussion of the issue before us. We note that the 1989 version of *W.Va.Code*, 55–7–6 applies in the case before us because the child died in 1991. *Cf.* syllabus point 5, *Arnold v. Turek*, 185 W.Va. 400, 407 S.E.2d 706 (1991) ("Statutory changes in the manner and method of distributing the proceeds of a judgment or settlement for wrongful death will not be given retroactive effect, and the statute in effect on the date of the decedent's death will control.")

We point out that syllabus points 1 and 2 of *Arnold, supra*, regarding how the wrongful death award should be allocated among the beneficiaries pursuant to *W.Va.Code*, 55–7–6 [1989] was changed with the 1992 amendments to *W.Va. Code*, 55–7–6. *Arnold* held in syllabus point 2 that

> [w]ith regard to the distribution of a wrongful death settlement, W.Va.Code, 55–7–7 (1989) [which refers to *W.Va.Code*, 55–7–6],

directs a judge to distribute the settlement in accordance with the decedent's will or, if there be no will, in accordance with the laws of descent and distribution. Thus, the legislature has taken away the discretion of the court to allocate a greater share of wrongful death proceeds based on an individual's degree of dependency, relationship, or loss, which existed prior to the 1989 amendments to the Wrongful Death Act.

*W.Va.Code*, 55–7–6(b), after being amended in 1992, reads, in relevant part:

> In every such action for wrongful death the jury, or in a case tried without a jury, the court, may award such damages as to it may seem fair and just, and, may direct in what proportions the damages shall be distributed to the surviving spouse and children.... If there are no such survivors, then the damages shall be distributed in accordance with the decedent's will or, if there is no will, in accordance with the laws of descent and distribution[.]

default caused the decedent's death. We disagree with the appellant's conclusion.

Our discussion begins with *W.Va.R.Evid.* 401, 402, and 403. We emphasize that these three rules are to be read together and are not to be applied in isolation. *See* 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers,* § 4–1[E](4) (3d ed.1994). *W.Va.R.Evid.* 402 states: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of West Virginia, by these rules, or by other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible." The term "relevant evidence" is defined in *W.Va.R.Evid.* 401: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Finally, *W.Va.R.Evid.* 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Clearly, evidence regarding a beneficiary's relationship or lack thereof with the decedent would be relevant in determining whether the beneficiary is entitled to damages for "[s]orrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent[.]" *W.Va.Code,* 55–7–6 [1989]. *See* 22A Am.Jur.2d *Death* § 312 (1988) ("[T]he extent of any affection on the part of the decedent for the beneficiaries ... may ... have a bearing upon the determination of the actual loss suffered by the beneficiaries.") and 1 Stuart M. Speiser et al., *Recovery for Wrongful Death and Injury* § 3:37 (3d ed.1992) ("Obviously the relationship between the decedent and the beneficiary or beneficiaries is a significant element in determining and fixing wrongful death damages[.]"). *See also Adkins v. Seaboard Coast Line R. Co.,* 351 So.2d 1088, 1092 (Fla.Dist.Ct.App.1977) (The evidence that the decedent was going to divorce his wife is admissible in a wrongful death action brought by the decedent's wife because the evidence is probative of the decedent's intent and, therefore, "warrant[s] consideration by the jury in assessing the survivors' damages [for their sentimental losses]."); *Countryman v. County of Winnebago,* 135 Ill.App.3d 384, 90 Ill.Dec. 344, 481 N.E.2d 1255 (1985) (In a wrongful death action brought by a wife, evidence that the wife found the decedent in bed with another woman was improperly excluded because it was relevant to whether the wife suffered loss of consortium and was more probative than prejudicial); *Strelecki v. Firemans Insurance Co. of Newark,* 88 Wis.2d 464, 276 N.W.2d 794, 801–802 (1979) (In a wrongful death action brought by decedent's wife the Supreme Court of Wisconsin held that the decedent's "personal conduct dealing with his periodic hospitalization for alcoholism[;] his fighting and assaulting his wife, mother and son[;] his extramarital activities[;] his attempts to molest his daughter[;] his suicidal tendencies and lack of marital sex with [the wife was] relevant to the determination of [the wife's] claim for loss of society and companionship[;]" however, the admission of evidence relating to his unwed daughter's pregnancy was not relevant).

When determining whether there is a right to recover damages for loss of society the elements of proof might include:

(1) Relationship of husband and wife, or of parent and child (or similar relationship between collateral relatives);

(2) Continuous living together of parties at and prior to time of wrongful death;

(3) Lack of absence of deceased or beneficiary for extended periods of time;

(4) Harmonious marital or family relations;

(5) Common interest in hobbies, scholarship, art, religion, or social activities;

(6) Participation of deceased in family activities;

(7) Disposition and habit of deceased to tender aid, solace and comfort when required;

(8) Ability and habit of deceased to render advice and assistance in financial matters, business activities, and the like.

Speiser, *supra* at § 3:51 at 241. However, the above list is obviously not exhaustive. As the Supreme Court of Iowa stated:

Quite obviously it is impossible to generalize on the extent to which persons—including parents and children—enjoy each other's companionship and society. This is a highly personal relationship which must of necessity be decided on a case-by-case basis. When it relates to a parent and child, it depends on all the circumstances important in the lives of a *particular* parent and a *particular* child. It takes into consideration not only the character, age, intelligence, interests and personality of the child but also those same factors as they are possessed, or not possessed, by the parent. After all, it is the parents' loss which is being appraised, and the extent to which he has been deprived of the company of his minor child depends on the ability of the child to offer companionship and society and the ability of the parent to enjoy it.

*Pagitt v. City of Keokuk*, 206 N.W.2d 700, 703 (Iowa 1973) (emphasis provided).

■ Indeed, the admission of any evidence at trial depends upon the facts of each particular case. It is for this reason that the responsibility of determining the admissibility of evidence lies with the trial judge, who is best able to evaluate the totality of circumstances surrounding the admission of evidence: " ' " 'Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596, 599 (1983)." Syllabus Point 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983).' Syllabus Point 7, *State v. Miller*, 175 W.Va. 616, 336 S.E.2d 910 (1985)." Syl. pt. 10, *Board of Education v. Zando, Martin & Milstead, Inc.*, 182 W.Va. 597, 390 S.E.2d 796 (1990). *See also* syl. pt. 9, *TXO Production v. Alliance Resources*, 187 W.Va. 457, 419 S.E.2d 870 (1992).

■ Accordingly, we hold that evidence of a beneficiary's relationship with the decedent may be admitted into evidence for purposes of determining damages in a wrongful death action pursuant to *W.Va.Code*, 55–7–6(c)(1) [1989] which provides for the recovery of damages for "[s]orrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent[.]" Whether evidence is relevant pursuant to *W.Va.R.Evid.* 401 and 402 when determining damages in a wrongful death action and whether the probative value of such evidence is substantially outweighed by the danger of unfair prejudice pursuant to *W.Va.R.Evid.* 403 must be determined on a case-by-case basis. Moreover, on appeal this Court will not disturb a trial court's ruling on the admissibility of such evidence unless there has been an abuse of discretion.

■ With these principles controlling, the facts leading up to appellant's specific complaints in the case before us must be examined. Prior to trial the appellant made two motions in limine. The first motion in limine was made on June 8, 1994, in which the appellant moved the trial court to instruct the appellees not to mention or refer to the volatile and acrimonious marital relationship between the appellant and her ex-husband (the decedent's father), William Weisenberg. The second motion in limine was made on June 16, 1994, in which the appellant moved to suppress, pursuant to *W.Va.R.Evid.* 403, all evidence relating to appellant's character, parental expertise, and private personal relationships. However, neither the parties nor the designated portions of the record which we have before us indicate how or whether the trial judge ruled on the appellant's motions in limine. Thus, we decline to address any error asserted by the appellant regarding her motions in limine: " 'In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken.' Syllabus Point 1, *Mowery v. Hitt*, 155 W.Va. 103 [, 181 S.E.2d 334] (1971)." Syl. pt. 1, *Shackleford v. Catlett*, 161 W.Va. 568, 244 S.E.2d 327 (1978).

At trial, the issue of whether evidence regarding the relationship between the ap-

pellant and the decedent should be admitted is raised on four occasions. On one occasion, the issue may be resolved by applying the framework we provided for analyzing when evidence involving the relationship between the decedent and beneficiary is admissible. On the other three occasions, the issue may be resolved as not being adequately preserved for appellate review.

■ First, the issue arises during Richard Todd Myers' testimony. Mr. Myers was dating the appellant when her son died. The appellant objected to the appellees asking Mr. Myers whether the decedent and his brother had to be disciplined. After a lengthy discussion the trial judge ruled that evidence of whether the appellant or Mr. Myers disciplined the children was relevant: "I think that it is a necessary component of a mother's relationship with a child who would have other adults she has living in the home and what their conduct may be towards her children. I think that is a component of the mother's relationship with a child. I am going to permit it and note your objection."

The appellant's counsel stated that he did not want the evidence to show that just because the appellant is a "bad person" "she is not entitled to recover for the death." The trial court agreed that the appellees' questioning might lead to impermissible evidence and warned the appellees to be careful: "I am not exactly clear when the line of questioning going too far would be.... It does appear there is probativeness and prejudice in a blend here. So just be sensitive of that. I think to the [appellees] I think you're at your peril before a jury but go ahead."[4]

Clearly, the trial judge analyzed the issue from the framework we provided above. The trial judge evaluated whether the evidence was relevant, and upon finding it to be relevant to the determination of whether the appellant sustained damages, evaluated whether its probative value was substantially outweighed by the danger of unfair prejudice. The trial judge determined that the probative value of the testimony regarding the disciplining of the children was not substantially outweighed by the danger of unfair prejudice. We do not find that the trial judge abused his discretion when admitting the evidence regarding the disciplining of appellant's children.

■ Second, the appellant asserts that it was error for the trial court to admit Mr. Myers' testimony that he permitted the decedent to walk to the bus stop unsupervised. We could not find in the record before us where the appellant's counsel objected to the admission of such testimony nor did the appellant's counsel note when the objection was made. As we have stated previously, "ordinarily a party may not claim evidentiary error on appeal where no objection is made at the trial level. This is designed to prevent a party from obtaining an unfair advantage by failing to give the trial court an opportunity to rule on the objection and thereby correct potential error." *Wimer v. Hinkle*, 180 W.Va. 660, 663, 379 S.E.2d 383, 386 (1989) (footnote omitted). After all, "[i]t is not the role of the trial judge to present evidence; nor is it his or her responsibility to exclude or limit evidence, as provided by evidence law.... To be clear, the party complaining on appeal of the admission of evidence bears sole responsibility for adequately preserving the record on meaningful appellate review." *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 114, 459 S.E.2d 374, 391 (1995). Thus, the appellant has failed to preserve this error for appeal: " 'Where objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal.'

---

4. During this exchange the appellant's counsel expressed concern over the admission of testimony by the appellant's ex-husband regarding the relationship between him and the appellant. The trial judge, as indicated above, ruled on the admission of testimony regarding the disciplining of appellant's children; however, the trial judge stated that the probative value of other evidence of this nature may be substantially outweighed by the danger of unfair prejudice. The trial judge simply deferred ruling on the admission of such evidence until it could be determined exactly what the evidence would be. When the ex-husband testified, however, the appellant's counsel only made an objection to the admission of hearsay testimony. He did not object to any testimony regarding the relationship between the ex-husband and the appellant which he complains of on appeal.

Syllabus Point 1, *State Road Commission v. Ferguson,* 148 W.Va. 742, 137 S.E.2d 206 (1964)." Syl. pt. 3, *O'Neal v. Peake Operating Co.,* 185 W.Va. 28, 404 S.E.2d 420 (1991). *See also W.Va.R.Evid.* 103(a).[5]

■ However, we recognize that pursuant to *W.Va.R.Evid.* 103(d) we may address "plain errors affecting substantial rights although they were not brought to the attention of the court." We have noted in the past that the plain error "doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result." Syl. pt. 4, in relevant part, *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988). More recently, we held that in order "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. pt. 7, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995). We further explained in *Miller, supra,* that when determining whether the error is plain we look to see if the error is clear or obvious. *Id.* at 18, 459 S.E.2d at 129. If the error is clear or obvious, then it must affect substantial rights. In other words, it must be prejudicial, affecting the outcome of the case. *Id.* Lastly, we point out, in the case before us, that it is the defendants and not the plaintiff who have the burden of persuasion with respect to prejudice.

■ In the case before us, we find that even if it was error to admit Mr. Myers' testimony that he permitted the decedent to walk to the bus stop unsupervised, such error

does not rise to the level of being plain error. Our review of the record indicates that there was sufficient evidence to support the jury's verdict. As we previously stated, the appellee, Mr. Root, testified that when the decedent began to walk out into the street in front of his truck he brought his truck to a complete stop as he approached the area where the bus stop was located. Mr. Root then motioned for the woman and two children, one of whom was the decedent, to cross the street. According to Mr. Root the woman declined to cross the street. Mr. Root maintains that he did not move his truck again until he was certain his path was clear. Under these facts the jury could reasonably find that the appellees used due care and were not negligent in spite of the appellant's contention that certain evidence which suggests that she did not properly supervise her children or was otherwise a bad parent was erroneously admitted. Thus, even if the admission of Mr. Myers' testimony was error, it did not affect the outcome of the case thereby implicating the plain error doctrine.

Third, the appellant asserts that it was error for the trial judge to admit her testimony that she allowed the decedent to walk alone to the bus stop. The appellant states that she objected to such testimony being adduced. Our review of the record indicates otherwise. The appellant's counsel did not object when she was asked whether the decedent walked to the bus stop unsupervised. In fact, the appellant's counsel did not make any objection until after the appellant testified that the decedent was learning to go to the bus stop on his own, and after she had responded to several more questions regarding this issue.[6]

---

5. *W.Va.R.Evid.* 103(a) states: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and (1) Objection.—In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]"

6. Below is a portion of the testimony which is at issue:

Q. [by the appellees' attorney] When was the last time that you or [Mr. Myers] walked the boy [the decedent] to the bus stop?

A. [by the appellant] Well, he didn't catch the bus at the apartments so I can't really say when the last time was. I can't recall a specific date. When we first moved and [Mr. Myers] was baby-sitting for me more regularly, then he walked him down every day. But then as we lived there awhile, and he learned the way, and he got older, and we prepared for first grade and things, he was learning to go on his own.

Q. On cross examination earlier I believe I established through Mr. Todd Myers testimony that no one had walked the boy down to the bus stop since the end of March 1991; do you recall that testimony?

Although the record is unclear, it appears that when the appellant's counsel finally objected, he specifically objected to the admission of the rules and regulations the appellant signed when she moved into the apartment complex where the decedent caught the bus, rather than to the admission of her testimony that she allowed the decedent to walk alone to the bus stop. Although the record is not explicit, we can only assume from the discussion between the attorneys that the rules and regulations at issue must have involved the supervision of children at the apartment complex. The trial judge, after a lengthy discussion with counsel, concluded that the rules and regulations of the apartment complex signed by the appellant were not admissible:

> I am anxious to do nothing to muddy this trial in terms of whatever it may be on appeal. And if the [appellee] is not urging this, and admits that this is not relevant in the area of liability because it would appear that, and also that it appears that the [appellant] has admitted and acknowledged that she and her fiance sent the child repeatedly as habit to the bus stop unsupervised, and so that has been demonstrated through her own testimony, that this really seems to be marginal.

> It seems perhaps it does run a risk—I am going to rethink this, perhaps it does run a risk of—it isn't relevant immediately to any particular point. I see relevance to damage[s] so tangential and so marginal since you have in essence developed the fact in any event that *showing a contract was violated*, I really don't see how that either enhances or decreases the recoverable damages if the jury feels inclined to even move to that segment of the trial. So

> I think I am going to have to reconsider this, and I am going to exclude it.

(emphasis added).

As we have previously stated, *W.Va. R.Evid.* 103(a) requires an attorney to make a timely objection stating the specific ground therefor, unless the specific ground is apparent from the context. *See* n. 5 *supra*. We recognize that there are situations in which it is impossible to object to an improper question before the witness responds. However, when this situation occurs the trial attorney must object as soon as possible and move to strike the witness's response to the improper question. If the trial attorney fails to move to strike, then the ruling of the trial judge is not preserved for appellate review. *See* 1 Franklin D. Cleckley, *supra* § 1–7(D) at 89 ("After the question is answered, an objection alone is insufficient unless accompanied by a motion to strike the answer."). The rationale behind *W.Va.R.Evid.* 103(a)'s requirement of a timely and specific objection is that a party "will not be allowed to wait in silence, hoping that the answer will be helpful, then object when the answer is damaging." *Id.* at 90.

In the case before us, our review of the record indicates that the appellant's counsel did not timely object to the admission of the appellant's testimony that she allowed the decedent to walk to the bus stop unsupervised. Moreover, once the appellant's counsel made an objection, he failed to move to strike the testimony which the appellant *now* complains of on appeal. Thus, the appellant has failed to preserve this issue for appellate review. *See* syl. pt. 3, *O'Neal, supra* and *W.Va.R.Evid.* 103(a), *supra*. Moreover, like the admission of such testimony from Mr.

---

A. Yes, sir.
Q. Do you agree with that?
A. I can't say, sir. I told you I am not certain of a date.
Q. Can you give us any information here today to indicate that that particular statement by Mr. Myers was false or inaccurate?
A. Well, as I said, sir, [the boy] didn't catch the bus at the tree. Sometimes Todd would have taken him home with him the night before and driven him to the bus stop, or if I didn't have someone that could watch him, gone to work with me that day, and I walked him to school, or he would go with Mr. White-

ley [the parties do not identify who Mr. Whiteley is] and Mr. Whiteley would drive him to school.
Q. On those instances where [the boy] left from his home in Roberts Gardens after the end of March of 1991 did he walk alone? Do you have any information to contradict that he walked alone?
A. I cannot say. I am not sure of a date.
[Appellant's attorney]: I would like to approach the bench on this matter. [At this point the attorneys discuss the admission of rules and regulations signed by the appellant when she moved into the apartment complex.]

Myers which we discussed above, we do not find that the admission of appellant's testimony implicates the plain error doctrine. *See* syl. pt. 7, *Miller, supra.*

Fourth, the appellant asserts that the trial judge erred when admitting William Weisenburg's testimony regarding the appellant's use of marihuana, cocaine and other drugs in the presence of their children. William Weisenburg is the appellant's ex-husband.

Prior to Mr. Weisenberg taking the witness stand, the appellees' counsel informed the trial court that Mr. Weisenburg would be testifying about appellant's use of drugs in front of their children. After being asked by the trial judge for a response to the anticipated testimony, the appellant's counsel stated that he was surprised to learn that Mr. Weisenberg would be testifying about appellant's drug use. The appellant's attorney requested a short break in order to confer with the appellant which the trial judge granted. However, we could not find in the record nor did the appellant's counsel note in the record where he objected to the admission of Mr. Weisenberg's testimony regarding appellant's drug use. Thus, once again the error, if error, was not preserved for appellate review nor for reasons which we have previously expressed does it implicate the plain error doctrine. *See* syl. pt. 3, *O'Neal, supra, W.Va.R.Evid.* 103(d), *supra* and syl. pt. 7, *Miller, supra.*

We emphasize that it is necessary for attorneys to make timely objections and to make clear their grounds for their objections when the grounds are not apparent from the context in order to preserve their error for appeal. Furthermore, simply raising the issue before the trial judge is insufficient. Attorneys have an obligation to protect the record in relation to rulings by trial judges on specific issues. In the case before us, the appellant's counsel's lack of precision makes clear the importance of adequately developing the record. As we previously stated, "the party complaining on appeal of the admission of evidence bears sole responsibility for adequately preserving the record on meaningful appellate review." *Tennant,* 194 W.Va. at 114, 459 S.E.2d at 391.

## III

The appellant also asserts that the trial judge erred when modifying appellant's jury instruction number 6. We are mindful that we have held the following in syllabus points 6 and 7 of *Tennant, supra:*

6. The formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.

7. ' " ' "Instructions must be read as a whole, and if, when so read, it is apparent they could not have misled the jury, the verdict will not be disturbed, through [sic] one of said instructions which is not a binding instruction may have been susceptible of a doubtful construction while standing alone." Syl. Pt. 3, *Lambert v. Great Atlantic & Pacific Tea Company,* 155 W.Va. 397, 184 S.E.2d 118 (1971).' Syllabus Point 2, *Roberts v. Stevens Clinic Hospital, Inc.,* 176 W.Va. 492, 345 S.E.2d 791 (1986)." Syllabus Point 3, *Lenox v. McCauley,* 188 W.Va. 203, 423 S.E.2d 606 (1992).' Syllabus Point 6, *Michael v. Sabado,* 192 W.Va. 585, 453 S.E.2d 419 (1994).

The appellant raises two errors with regard to the appellant's jury instruction number 6 which was read to the jury. The first error concerns the language from the following paragraph found in the instruction:

[B]ecause children are impelled by instincts of immaturity and are often heedless of danger, the law imposes a higher degree of care around children. It is the legal duty of an automobile driver when encountering school children in the vicinity of a school or *where there are groups of children* to exercise a high degree of caution, vigilance and alertness in keeping a proper lookout, sounding warnings of his approach, and driving in such a conscientious and intelligent manner as to avoid inflicting injury. More than ordinary care is required of a driver around children. A driver must increase his exertions and at-

tention in order to avoid danger to children whom he may see or, by the exercise of reasonable care, should see on or near a roadway.

(emphasis added). The appellant asserts that the trial judge erred by substituting the phrase "a school bus stop" with the words "where there are groups of children." We fail to see how this modification would mislead a jury. In fact, this modification is more beneficial to the appellant in that the trial judge instructed the jury that a high degree of care must be used when groups of children are present regardless of whether or not the children are present at a bus stop. Accordingly, we hold that the trial judge did not abuse his discretion.

Second, the appellant argues that the trial judge erred by deleting the following words from instruction number six: "Ascertaining the whereabouts of [the decedent] after waving for him to cross and before starting his vehicle after having been stopped." However, our review of the instruction which was read to the jury reveals that similar language was read by the trial judge in a later portion of the same instruction. Specifically, the trial judge informed the jury in the instruction that if they found that Mr. Root

> breached the high degree of care imposed upon him when he hit [the decedent], by failing to keep a proper lookout, or failing to sound a warning of his approach, or by regulating the speed of the truck he was driving in order to avoid striking [the decedent], or by *starting to move the truck he was driving before ascertaining the whereabouts of [the decedent]*, then you may find Mr. Root negligent.

(emphasis added). Clearly, the trial judge instructed the jury as the appellant sought. Thus, we conclude that the trial judge did not abuse his discretion in regard to rulings on jury instructions.

## IV

Based upon our discussion above, we find no reversible error. Accordingly, we affirm the August 24, 1994 order of the Circuit Court of Berkeley County.

Affirmed.

ALBRIGHT, J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.