506 S.E.2d 77

**Jerry M. SHIEL, Plaintiff
Below, Appellee,**

v.

**Jaiyoung RYU, M.D.; University of West Virginia Board of Trustees; and West Virginia University Hospital, Inc., Defendants Below, Appellants.**

**Nos. 24443, 24444.**

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 20, 1998.

Decided July 10, 1998.

42

Jacques R. Williams, Hamstead, Hamstead & Williams, Morgantown, for Appellee Shiel.

William E. Galeota, P. Greg Haddad, Steptoe & Johnson, Morgantown, for Appellants Ryu and University of West Virginia Board of Trustees.

Ancil G. Ramey, Steptoe & Johnson, Charleston, for Appellants Ryu and University of West Virginia Board of Trustees.

Edward C. Martin, Jeffrey Wakefield, Christine S. Vaglienti, Flaherty, Sensabaugh & Bonasso, Charleston, for Appellant West Virginia University Hospital, Inc.

PER CURIAM:[1]

Dr. Jaiyoung Ryu, M.D., the University of West Virginia Board of Trustees, and West

1. We point out that a per curiam opinion is not     legal precedent. *See Lieving v. Hadley,* 188

Virginia University Hospital, Inc., (hereinafter collectively referenced as "Appellants") appeal a decision of the Circuit Court of Monongalia County granting a new trial in a medical malpractice case, subsequent to a defense verdict. We reverse the decision of the lower court and remand for reinstatement of the jury verdict.

## I.  FACTS AND UNDERLYING LITIGATION

Mr. Jerry M. Shiel (hereinafter "Appellee"), a building maintenance worker at EG & G in Morgantown, was initially diagnosed with carpal tunnel syndrome in 1991 and was treated surgically in 1991 by David Fogarty, M.D. Dr. Fogarty, not a party in this civil action, performed bilateral carpal tunnel releases during that surgery.

Mr. Shiel's symptoms of carpal tunnel syndrome returned in 1993, and Mr. Shiel was examined on November 16, 1993, by Dr. Ryu, an orthopedist with a sub-specialty certification in hand surgery. Dr. Ryu recommended that Mr. Shiel undergo surgery to relieve the pressure on the median nerves caused by the scar tissue which had formed subsequent to the surgery performed by Dr. Fogarty in 1991. Thus, on January 5, 1994, (left wrist) and February 9, 1994, (right wrist) Dr. Ryu surgically separated the nerves that had adhered to scar tissue and placed an interpositional material [2] between the nerves and the scar tissue to protect the nerves from further adhesion to the scar tissue. Mr. Shiel thereafter suffered inflammation [3] and pain in the wrists, prompting additional surgery on both wrists. Thus, on March 30, 1994, (right wrist) and July 6, 1994, (left wrist), Dr. Ryu performed a second set of surgical procedures, removing the interpositional material that had been employed as a barrier. During the left wrist surgery in July 1994, some of the fascicles [4] of the nerve were unavoidably severed, causing loss of sensation in Mr. Shiel's left hand.

Mr. Shiel filed a medical malpractice action filed in Monongalia County on October 10, 1995, alleging that Dr. Ryu had breached the standard of care in the manner in which he performed the surgical procedures on Mr. Shiel's wrists. During a July 1996 trial, Mr. Shiel introduced the testimony of Dr. Stanley Feingold, a board certified orthopedic surgeon practicing in Hicksville, New York. Prior to his retention in this case, Dr. Feingold admitted that he had never heard of umbilical vein grafts in carpal tunnel syndrome surgery. Dr. Feingold further explained that he had not examined the Mr. Shiel until the morning of his testimony. Dr. Feingold concluded that based upon his research into the subject matter since he was hired on this case, Dr. Ryu had failed to wrap the nerve properly during the first surgery, had failed to pursue more conservative treatments prior to that surgery, and had failed to use a more conservative approach to resolving Mr. Shiel's recurrent carpal tunnel syndrome. The Appellants emphasized Dr. Feingold's lack of experience in recurrent carpal tunnel syndrome surgery and particularly involving the use of interpositional material. Dr. Feingold also admitted that he did not "know what the true standard of care is" among hand surgeons concerning the use of human umbilical vein grafts for carpal tunnel surgeries.[5]

---

W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

2.  Dr. Ryu referred to these procedures as umbilical vein grafts. They involved utilization of umbilical artery harvested and prepared for that purpose and surgically implanted in Mr. Shiel's wrists as a barrier between the scar tissue and the median nerves.

3.  One of the factual disputes at trial involved the cause of the inflammation subsequent to the surgery placing the interpositional material in Mr. Shiel's wrists. Mr. Shiel introduced medical records indicating that the complications were due to the rejection of the graft implants, yet Dr. Ryu refused to admit that Mr. Shiel's problems were attributable to tissue rejection, explaining instead that the residents' notes regarding tissue rejection were inaccurate and that the inflammation was due to infection.

4.  Fascicles are small bundles of nerve fibers.

5.  Mr. Shiel also introduced the testimony of Dr. Alex Ambroz, a board certified forensic medical examiner specializing in disability and impairment. Dr. Ambroz testified that Mr. Shiel suffered a 40% whole person impairment and that he had suffered a 10% whole person impairment prior to Dr. Ryu's actions. Dr. Ambroz also introduced the concept that Mr. Shiel may suffer

**44**

The Appellants presented the testimony of Dr. Victoria R. Masear, the physician who devised the graft barrier techniques for use in carpal tunnel syndrome surgery. Dr. Masear is a certified orthopedic surgeon specializing in hand surgery, and ninety percent of her practice involves hand surgery. She testified that umbilical vein implants had been used in over 50,000 surgical cases, mostly involving vascular surgery, and there had not been any reported cases of rejection. Dr. Masear also explained that the method utilized by Dr. Ryu differed slightly from her own method. Dr. Ryu used the material as a barrier without wrapping it around the nerve, while Dr. Masear used a "barber pole" or "pantaloon" method for wrapping. Dr. Masear did acknowledge, however, that some surgeons merely used the material as a barrier between the nerve and the scar tissue. She stated, "I can't criticize what they do any more than they can criticize what I do because nobody knows the right answer." Dr. Masear also testified that more conservative treatments would not have been beneficial, and that contrary to the plaintiff's theory, the post-operative problems were caused by infection, not rejection of the grafts.

Dr. L. Andrew Koman, a board certified hand surgeon, also testified for the Appellants. Dr. Koman explained that approximately sixty percent of his practice involved hand surgery and that he performed umbilical grafts in twenty-five to thirty recurrent carpal tunnel syndrome cases. Dr. Koman concluded that Dr. Ryu did not deviate from the standard of care and that the post-operative problems stemmed from inflammation and infection, not rejection of the barrier material placed by Dr. Ryu.

Dr. Gregg Michael O'Malley, a certified orthopedic surgeon with certification in hand surgery, testified that he had performed over 200 surgeries for carpal tunnel syndrome. He explained that recurrent carpal tunnel syndrome occurs in only one percent of patients and that such surgeries are ten times more difficult to perform than a primary carpal tunnel release. Dr. O'Malley also concluded that Dr. Ryu did not deviate from the standard of care.

Dr. Mark Joel Davis, a fifth year resident in charge of obtaining informed consent, testified that Mr. Shiel was informed that if the nerve was found to be adherent to the scar, Dr. Ryu would interpose this vein graft in between the nerve and the scar. Dr. Davis also testified that he had discussed available options with Mr. Shiel, including splinting the wrists, anti-inflammatory drugs, steroid injections, or decreased activity.

Dr. Ryu also testified regarding his treatment of Mr. Shiel, explaining that Mr. Shiel suffered from a recurrence of carpal tunnel syndrome and that alternatives to surgery were discussed with Mr. Shiel. Dr. Ryu testified regarding each option discussed with Mr. Shiel and provided the jury with his assessment of the potentials for success of each option and the rationale for the surgery decision. Dr. Ryu explained the surgical procedures in detail.

Based upon the extensive evidence presented, the jury returned a verdict in favor of the Appellants. Mr. Shiel subsequently filed a motion for a new trial, alleging that the verdict was contrary to the evidence. The lower court granted a new trial on November 15, 1996, reasoning that the verdict was against the clear weight of the evidence. Specifically, the lower court found as follows:

> The evidence presented by the defendants was not sufficient to overcome the clear evidence of devastating personal injury suffered by the plaintiff following 10 months of treatment by Dr. Ryu and multiple surgical procedures, in two of which Dr. Ryu admitted to having cut fascicles in the plaintiff's nerves.... The medical records contain multiple references to infection and rejection attributable to the implantation of foreign material, even though Ryu denied the relationship and blamed the discrepancy between his recollection and 10 months worth of medical records on the lack of knowledge or sophistication by the residents who dictated the notes for his signature. The clear

from "reflex sympathetic dystrophy," a condition of unknown origin occurring in one in two thousand injuries. Dr. Ambroz emphasized that

while the condition does sometimes follow surgeries, it is not necessarily related to the surgery and is not preventable by the surgeon.

weight of the evidence was that these multiple rejections and infections were attributable to the use of foreign tissue implant material and that this in turn damaged the median nerves in the plaintiff's wrists.... The clear weight of the evidence on these issues, and others addressed in plaintiff's Motion for New Trial, is that Dr. Ryu, while performing a procedure with a vein graft for only the 3rd and 4th times, did not perform the procedure in the manner detailed by the innovator; did not perform it on the category of severely impaired patient for whom this type of treatment is normally reserved; cut nerves in the process of removing the implants following reaction, and that as a result of all of this the plaintiff left the care of Dr. Ryu substantially crippled which he had not been before.

The Appellants instituted this appeal, alleging that the lower court abused its discretion in granting a new trial in this case.

## II. STANDARD OF REVIEW

■ Pursuant to Rule 59(a) of the West Virginia Rules of Civil Procedure, a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law." The Appellants allege that the lower court's grant of a new trial in the present matter constitutes an abuse of discretion under the principles of syllabus point three of *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994), *cert. denied*, 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995), as follows:

> A motion for a new trial is governed by a different standard than a motion for a directed verdict. When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the West Virginia Rules of Civil Procedure, the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a

new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

The Appellants maintain that the verdict was not against the clear weight of the evidence, was not based on false evidence, and would not result in a miscarriage of justice. Absent those factors, pursuant to the *Asbestos Litigation* standard, the Appellants contend that the lower court abused its discretion by granting a new trial. The *Asbestos Litigation* standard embraces our consistent approach of reviewing "a circuit court's ruling on a motion for a new trial under an abuse of discretion standard." *Tennant v. Marion Health Care Foundation*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995).

■ In implementing our standard of review, we observed in syllabus point four of *Young v. Duffield*, 152 W.Va. 283, 162 S.E.2d 285 (1968), overruled on other grounds in *Tennant*, that "[a]n appellate court is more disposed to affirm the action of a trial court in setting aside a verdict and granting a new trial than when such action results in a final judgment denying a new trial." 152 W. Va. at 283, 162 S.E.2d at 287. The *Asbestos Litigation* standard also expresses our reluctance to disturb a lower court's decision regarding the granting of a new trial, by noting that "the role of the appellate court in reviewing a trial judge's determination that a new trial should be granted is very limited." 193 W.Va. at 126, 454 S.E.2d at 420. "A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion." *Id.*

In discussing the *Asbestos Litigation* ruling and its impact upon this Court's review, we observed in *Tennant* that "when a trial court abuses its discretion and grants a new trial on an erroneous view of the law, a clearly erroneous assessment of the evidence, or on error that had no appreciable effect on the outcome, it is this Court's duty to reverse." Id. at 106, 459 S.E.2d at 383. In *Tennant*, for instance, we found no reversible error in a challenged jury charge, and we consequently found that the lower court abused its discretion in granting a new trial

based upon alleged defects in that instruction. Id. at 117, 459 S.E.2d at 394.

Similarly, in *Maynard v. Adkins,* 193 W.Va. 456, 457 S.E.2d 133 (1995), we reiterated the limited appellate review principles of *Asbestos Litigation,* but we recognized that "consistent with *Asbestos Litigation,* on the other hand, is the general principle that the judgment of a trial court in awarding a new trial should be reversed if it is 'clearly wrong' or if a consideration of the evidence shows that the case was a proper one for jury determination." 193 W.Va. at 459, 457 S.E.2d at 136, quoting *Sargent v. Malcomb,* 150 W.Va. 393, 395, 146 S.E.2d 561, 563 (1966). As we explained in syllabus point four of *Bronson v. Riffe,* 148 W.Va. 362, 135 S.E.2d 244 (1964), "[w]here the trial court improperly sets aside a verdict of a jury, such verdict will be reinstated by this Court and judgment rendered thereon." Syllabus point four of *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976), explains:

Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

### III. PROVINCE OF THE JURY

The numerous disputed facts in the case sub judice were properly submitted for jury determination, and there is no allegation of improper instruction or other error in the presentation of the evidence. We have consistently held that the function of the jury is to weigh the evidence with which it is presented and to arrive at a conclusion regarding damages and liability. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court explained that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . ." Id. at 255, 106 S.Ct. 2505.

While syllabus point three of *Asbestos Litigation* authorizes a trial court to weigh the evidence in the context of granting a new trial, such authorization does not obviate the essential role of the jury in resolving conflicting evidence. We have consistently maintained: " 'It is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed.' Syllabus Point 2, *Skeen v. C and G Corporation,* 155 W.Va. 547, 185 S.E.2d 493 (1971)." Syl. Pt. 4, *Young v. Ross,* 157 W.Va. 548, 202 S.E.2d 622 (1974). Syllabus point two of *French v. Sinkford,* 132 W.Va. 66, 54 S.E.2d 38 (1948) explains: "Where, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong." *See King v. Ferguson,* 198 W.Va. 307, 480 S.E.2d 516 (1996); *Laney v. State Farm Mut. Auto. Ins. Co.,* 198 W.Va. 241, 479 S.E.2d 902 (1996).

In syllabus point fourteen of *Abdulla v. Pittsburgh and Weirton Bus Co.,* 158 W.Va. 592, 213 S.E.2d 810 (1975), we stated:

"A jury is better able to judge of the circumstances of a case, the weight of the testimony, and the peculiar hardships and aggravations attendant upon an injury, and its verdict for damages for personal injury, which is not so excessive as to indicate, as a matter of law, passion, prejudice, partiality, mistake, or lack of due consideration, will not be set aside by this Court on that ground." Syllabus, *Williams v. Penn Line Service, Inc.,* 147 W.Va. 195, 126 S.E.2d 384 (1962).

In syllabus point two of *Walker v. Monongahela Power Company,* 147 W.Va. 825, 131 S.E.2d 736 (1963), we explained:

"When a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it." Point 4, Syllabus, *Laslo v. Griffith,* 143 W.Va. 469, 102 S.E.2d 894.

In reviewing a jury verdict, all reasonable and legitimate inferences must be considered in favor of party for whom the verdict was returned.

In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.

*Walker*, 147 W.Va. at 826, 131 S.E.2d at 737, syl. pt. 3.

In *McNeely v. Frich*, 187 W.Va. 26, 415 S.E.2d 267 (1992), we explained as follows:

An essential element of our judicial system is the right of a party, in most cases, to request a jury of his or her peers to render a verdict based upon the evidence and testimony presented. Because of the jury's unique ability to see the evidence and judge the demeanor of the witnesses on an impartial basis, a jury verdict is accorded great deference. It is the province of the jury to weigh the testimony and to resolve questions of fact when the testimony conflicts.

187 W.Va. at 29, 415 S.E.2d at 270. The *McNeely* opinion reasoned as follows:

While conflicting evidence was presented by both parties, such is the case in most trials. Both experts presented by the parties were credible witnesses and were vigorously cross-examined by the opposing party. After reviewing all reasonable and legitimate inferences in the defendant's favor, we cannot conclude, as the trial court did, that the jury verdict for the defendant was "contrary to all credible evidence in this case." By affirming the trial judge's order setting aside the verdict in this case, we would be permitting the judge to intrude upon the exclusive province of the jury to weigh and decide questions of fact. We refuse to permit this intrusion where the facts do not warrant such an action. Thus, the question of whether the defen-

dant violated the standard of care was properly left to the jury for decision.

*McNeely*, 187 W.Va. at 30, 415 S.E.2d at 271.

In *Maynard*, discussed above, we recognized the general principle that the award of a new trial should be reversed if a consideration of the evidence indicates that the matter was a proper one for jury determination, and we found that general principle to be consistent with the *Asbestos Litigation* standard. 193 W.Va. at 459, 457 S.E.2d at 136.

### IV. CONSTITUTIONAL CHALLENGE

The Appellants also contend that a circuit judge's reevaluation of a jury verdict with respect to the credibility of the witnesses is in violation of West Virginia Constitution Art. III, § 13 and the Seventh Amendment to the United States Constitution. Art. III, section 13 of the West Virginia Constitution provides, "In suits at common law, where the value in controversy exceeds twenty dollars exclusive of interest and costs, the right of trial by jury, if required by either party, shall be preserved.... No fact tried by a jury shall be otherwise reexamined in any case than according to rule of court or law." We decline to retreat from our decision in *Asbestos Litigation* specifically granting a trial judge the authority to consider the credibility of the witnesses. The determinations by the lower court were based upon the *Asbestos Litigation* authority to "weigh the evidence" rather than the authority to consider the credibility of witnesses. The granting of a new trial was premised upon a finding by the trial court that the verdict was against the clear weight of the evidence and that a substantial miscarriage of justice would occur if the verdict had been permitted to stand. Therefore, because the lower court's order was not founded upon the credibility of the witnesses, we do not further address the argument concerning the constitutionality of permitting a judge such latitude in reviewing a jury determination.

### V. CONCLUSION

Having reviewed the record and the contentions of the parties, we conclude that the underlying civil action was fairly tried before a competent judge and jury in the

Circuit Court of Monongalia County. Despite the broad discretion afforded to the lower court in determining to grant a new trial, we find that the lower court abused its discretion in vacating this verdict. We therefore reverse the lower court's order granting a new trial, and we remand this matter for reinstatement of the verdict of the jury.

Reversed and remanded.

STARCHER, J., deeming himself disqualified, did not participate in the decision in this case.

MacQUEEN, Judge, sitting by temporary assignment.