IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2016 Term

**FILED**

**October 12, 2916**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-1105

REGINALD S. GRIMMETT,
Defendant Below, Petitioner

v.

WILLIAM D. SMITH AND KERRY L. SMITH,
Plaintiffs Below, Respondents

Appeal from the Circuit Court of Wood County
Honorable J.D. Beane, Judge
Civil Action No. 11-C-216

REVERSED AND REMANDED

Submitted: September 14, 2016
Filed: October 12, 2016

George J. Cosenza, Esq.
Cosenza Law Office
Parkersburg, West Virginia
Attorney for Petitioner

Robert L. Bays, Esq.
John C. Hudson, Esq.
Bowles Rice LLP
Parkersburg, West Virginia
Attorneys for Respondents

JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "A motion for a new trial is governed by a different standard than a motion for [judgment as a matter of law].  When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure*, the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial.  A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion."  Syl. Pt. 3, *In re State Public Bldg. Asbestos Litig.*, 193 W.Va. 119, 454 S.E.2d 413 (1994).

2.      ""The ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence."   Syl. pt. 4, in part, *Sanders v. Georgia-Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).'  Syllabus point 2, *Estep v. Mike Ferrell Ford Lincoln-Mercury, Inc.*, 223 W.Va. 209, 672 S.E.2d 345 (2008)."  Syl. Pt. 2, *CSX Transp., Inc. v. Smith*, 229 W.Va. 316, 729 S.E.2d 151 (2012).

3. "Where the trial court improperly sets aside a verdict of a jury, such verdict will be reinstated by this Court and judgment rendered thereon." Syl. Pt. 4, *Bronson v. Riffe*, 148 W.Va. 362, 135 S.E.2d 244 (1964).

4. "Where, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong." Syl. Pt. 2, *French v. Sinkford*, 132 W.Va. 66, 54 S.E.2d 38 (1948).

5. "It is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed." Syl. Pt. 2, *Skeen v. C and G Corp.*, 155 W.Va 547, 185 S.E.2d 493 (1971).

6. "When a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it." Syl. Pt. 4, *Laslo v. Griffith*, 143 W.Va. 469, 102 S.E.2d 894 (1958).

7. "In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved." Syl. Pt. 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983).

LOUGHRY, Justice:

The petitioner and defendant below, Reginald S. Grimmett, appeals a September 23, 2014, order of the Circuit Court of Wood County setting aside a jury verdict and granting a new trial to the respondents and plaintiffs below, William Smith and his wife, Kerry Smith. The Smiths filed a complaint on May 20, 2011, asserting Mr. Grimmett damaged their real property while developing a mobile home community on his adjacent tract of land by allowing sediment to cross the boundary line and settle into their pond. At the end of a three-day trial in July 2014, the jury returned a verdict finding Mr. Grimmett not liable. Thereafter, pursuant to a motion for a new trial filed by the Smiths, the circuit court found the verdict was against the clear weight of the evidence, clearly wrong, and would result in a miscarriage of justice. In this appeal, Mr. Grimmett argues that sufficient evidence was presented at trial to support the jury's verdict.

Upon review of the parties' briefs and arguments, the submitted record, and pertinent authorities, we find the circuit court committed reversible error by setting aside the jury verdict and granting the Smiths a new trial. Accordingly, we reverse the circuit court's decision and remand this case for entry of an order reinstating the jury's verdict.

1

## I.  Factual and Procedural Background

The Smiths and Mr. Grimmett are adjacent owners of real estate located in Mineral Wells, West Virginia.  Mr. Grimmett purchased his eleven-acre tract in 2002 and developed it into a mobile home rental community known as Skyview Acres in 2003.[1]  The Smiths obtained their property, which includes a dwelling and a half-acre pond, in July 2003. At the time of their purchase, the Smiths were aware of the ongoing development of the Grimmett tract.

In 2009, Mr. Grimmett constructed a walking trail around the perimeter of his property to mark his boundary and provide an exercise area for his tenants.  Two years later, he began to construct a small amphitheater and picnic shelter.  During the course of construction, Mr. Grimmett was cited for various violations of West Virginia Department of Environmental Protection (DEP) regulations related to erosion control; however, he was never fined.  Mr. Grimmett corrected the environmental violations, completed the project, and the construction permit was terminated.[2]

---

[1]There are twenty-five mobile homes on Mr. Grimmett's property.

[2]The DEP documents submitted into evidence at trial indicate that whenever an individual develops more than three acres of property, a permit for storm water discharges associated with the construction activity must be obtained. The permitting process requires the individual to submit a drainage plan for controlling the runoff to the DEP permitting section.  When storm water discharges associated with the construction activity are eliminated, the individual must submit A Notice of Termination form to the DEP.  After the DEP determines by inspection that stabilization of the site is complete, the permit is terminated.

The Smiths filed this civil action seeking compensation for damage to their real property allegedly caused by Mr. Grimmett's development and excavation of his adjoining land. At trial, the key witness for the Smiths was Garland Roberts, who is employed by the DEP as a construction stormwater inspector for the southwest region of the state. Mr. Roberts testified that he visited Mr. Grimmett's property on three occasions after Mr. Grimmett requested termination of his construction permit. Mr. Roberts stated that during his first and second visits to the property, he documented violations of relevant DEP regulations, testifying:

> There was a violation for water quality standards, deposits were noted in the stream below. Conditions not allowable. There was a violation for not inspecting the erosion and sediment control devices according to the requirement. There was a violation for not maintaining records of those inspections. There was a violation of not proper operation and maintenance of all erosion and sediment control structures. And there was a violation for not posting the required outlet marker. An additional violation was issued for not reestablishing vegetation within 30 days of it failing to germinate.

Mr. Roberts further testified that before he ever visited the property, Mr. Grimmett called him asking for assistance "quite a number of times." Mr. Roberts said he advised Mr. Grimmett that "he needed to put in controls for stream stabilization to hold the sediments in place," but "I didn't specify exactly what controls he needed to install." Acknowledging that providing assistance to permittees is part of his job, Mr. Roberts explained he is responsible for thirteen counties and thousands of permits, and he does not always have time to render help.

3

Regarding his third visit to the property, Mr. Roberts testified he determined the site was stabilized and, accordingly, terminated Mr. Grimmett's construction permit. Mr. Roberts stated that Mr. Grimmett corrected the violations in a timely manner and, while sediment from the Grimmett property went downstream, he did not have any idea what volume of sediment left the site or where the sediment was ultimately deposited. Mr. Roberts said he never visited the Smiths' property and he never examined their pond. During Mr. Roberts's testimony, photographs he took during his inspections were shown to the jury.

The Smiths also presented testimony from their neighbor, Patricia Mulinex, who grew up in the area. Ms. Mulinex testified she has lived in her current house, which is located next to the Smiths, since 1999. Ms. Mulinex's testimony focused on the the color of the pond before and after Mr. Grimmett completed his construction projects. On cross-examination, she was asked, "And was the pond clear today?" Mrs. Mulinex answered, "It was looking pretty good."

Terry Lane Smith, a commercial and residential contractor with thirty-two years of experience in the excavating business, testified for the Smiths regarding the cost to clean out the pond.[3] Terry Smith testified that he visited the Smiths' property on two

[3]Although they have the same last name, the respondents, William and Kerry Smith, are not related to Terry Smith. To avoid confusion, we refer to Terry Smith using his first and last name. William Smith is referenced by his full name or "Mr. Smith."

occasions and provided two estimates.[4]  In 2010, he estimated the cost to clean out the pond would be approximately $96,000.  In 2013, his estimate ranged from $126,000 to $212,000. He attributed the difference in price to the method of debris removal he proposed to use and the fact he believed that by 2013, additional sediment had flowed into the pond.  However, Terry Smith was not able to say how much sediment was actually in the pond.  He testified he did not know the depth of the pond when the Smiths purchased the property; he never measured the depth of the pond when he gave his estimates; and he did not have a conversation with the Smiths regarding their desired depth for the pond.  When asked to explain how he arrived at his estimates, Terry Smith indicated he factored in the cost of renting equipment to complete the project.  He admitted, though, that he had not obtained any price quotes from the companies that would provide the equipment.[5]

William Smith testified he and his wife purchased their property for $168,000. Mr. Smith described the pond at the time of purchase as "rich in sediment" and " reddish-brown" in color.  He stated "the color was off putting to my wife,"explaining she would not

---

[4]Two additional written estimates for cleaning out the pond were submitted into evidence.  One business proposed to partially excavate the pond at a cost of $7,300.  Another business proposed "pond work and land restoration" at a cost of $81,300.

[5]During his testimony, Terry Smith acknowledged that he had been a client of the Smiths' attorney for eighteen to twenty years, and he was being paid $400 an hour for his testimony.  This arrangement was confirmed by William Smith, who testified he had been told by his attorney to set aside $5,000 to pay for expert testimony.  While the parties refer to Terry Smith as an expert witness, the trial transcript does not reflect that he was qualified as an expert at trial.

swim in the pond. He indicated, however, that he was not concerned about the condition of the pond at the time of purchase. Mr. Smith further testified that after a few years, the color of the pond improved until Mr. Grimmett began constructing his walking trail in 2009. Mr. Smith testified he does not know how deep the pond was when he purchased his property and he has never had the depth of the pond measured. During Mr. Smith's testimony, a video showing runoff leaving Mr. Grimmett's property was presented to the jury. Testifying that the runoff went into his pond, Mr. Smith used this video to indicate the flow pattern. While maintaining Mr. Grimmett's property is the source of the sediment in his pond, Mr. Smith acknowledged that runoff from other surrounding properties has also resulted in the depositing of silt and debris in his pond. In that regard, he testified on cross-examination as follows:

> Q:    So you're getting some muddy water and things off the Mulinex property when there's a heavy rain?
> A:    Yes.
> Q:    And that's feeding into your pond?
> A:    Yes.
> Q:    Have –
> A:    Quite a bit.
> Q:    Have you ever tried to do anything with them to stop that from happening?
> A:    No. Again, that's–those are some really good people, and it's a drop in the bucket really.
> Q:    Okay.
> A:    It's not worth hurting our relationship over.
> Q:    But it is contaminating your pond?
> A:    Not really.
> Q:    It's silty water coming in your pond, isn't it?
> A:    It's – to compare the two is just absurd.

Q: Well, okay. But you would at least agree with me that the water that's being deposited into your pond from time-to-time from the Mulinex property is dirty water?

A: Yes.

Q: That carries silt and other particles in it, correct?

A: Yes.

After the Smiths presented their case, Mr. Grimmett testified on his own behalf but did not present any additional witnesses. Mr. Grimmett told the jury about the various construction projects on his property and his methods of erosion control, explaining that he used "a lot of silt fencing." Generally, Mr. Grimmett disputed the Smiths' claim that excessive amounts of sediment left his property as a result of his construction activities and flowed into their pond. During his testimony, the jury was shown a video of the Smiths's pond that Mr. Grimmett took a few days prior to trial. According to the record in this case, this video showed that the pond was clear with lily pads growing in the water.[6]

The jury was given a verdict form to complete during deliberations with the following three questions pertaining to liability:

Have the Plaintiffs proven, by a preponderance of the evidence, that the Defendant, Reginald Grimmett, in the development of his real property, unreasonably caused silt, dirt or other pollutants, to come upon the property of the Plaintiffs, William D. Smith and Kerry L. Smith?

---

[6]During their deliberations, the jury requested and was permitted to view Mr. Grimmett's video a second time.

7

Have the Plaintiffs proven, by a preponderance of the evidence, that the Defendant, Reginald Grimmett, in the development of his real property was negligent in the construction and development of his real property, which caused silt, dirt, rocks, chemicals or water in unnatural quantities, to come upon the property owned by the Plaintiffs, William D. Smith and Kerry L. Smith?

Have the Plaintiffs proven, by a preponderance of the evidence, that the Defendant, Reginald Grimmett, by his construction work, caused silt to accumulate in the pond owned by the Plaintiffs, William D. Smith and Kerry L. Smith?

The jury answered "no" to each question, returning a verdict in favor of Mr. Grimmett and never reaching the issue of damages. Thereafter, the Smiths filed their motion for a new trial, arguing the jury's verdict was against the weight of the evidence and clearly wrong. The circuit court granted the motion in its September 23, 2014, order, and this appeal followed.

## II. Standard of Review

Rule 59 of the West Virginia Rules of Civil Procedure authorizes a circuit court to grant a new trial "to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law[.]" Consequently,

[a] motion for a new trial is governed by a different standard than a motion for [judgment as a matter of law]. When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure*, the trial judge has the authority to weigh the

8

evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

Syl. Pt. 3, *In re State Pub. Bldg. Asbestos Litig.*, 193 W.Va. 119, 454 S.E.2d 413 (1994).

Recognizing appellate review of a decision granting a new trial is very limited, this Court has explained:

> "'The ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence.' Syl. pt. 4, in part, *Sanders v. Georgia-Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976)." Syllabus point 2, *Estep v. Mike Ferrell Ford Lincoln-Mercury, Inc.*, 223 W.Va. 209, 672 S.E.2d 345 (2008).

Syl. Pt. 2, *CSX Transp., Inc. v. Smith*, 229 W.Va. 316, 729 S.E.2d 151, (2012). In other words, while the decision to grant a new trial is afforded great deference, "when a trial court abuses its discretion and grants a new trial on an erroneous view of the law, a clearly erroneous assessment of the evidence, or on error that had no appreciable effect on the outcome, it is this Court's duty to reverse." *Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 106, 459 S.E.2d 374, 383 (1995). With this standard in mind, we consider the parties' arguments.

### III. Discussion

In this case, there has been no allegation that the jury was not properly instructed, nor has any other error in the presentation of evidence been asserted. The dispute in this case centers solely upon the jury's assessment of the conflicting evidence that was presented at trial. Mr. Grimmett maintains that sufficient evidence was presented to support the jury's verdict. Conversely, the Smiths argue that the weight of the evidence required a decision in their favor.

"We have consistently held that the function of the jury is to weigh the evidence with which it is presented and to arrive at a conclusion regarding damages and liability." *Shiel v. Ryu*, 203 W.Va. 40, 46, 506 S.E.2d 77, 83 (1998). Indeed, a firmly-established principle of our jurisprudence is: "Where, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong." Syl. Pt. 2, *French v. Sinkford*, 132 W.Va. 66, 54 S.E.2d 38 (1948). Elaborating further in syllabus point two of *Skeen v. C and G Corp.*, 155 W.Va 547, 185 S.E.2d 493 (1971), this Court stated: "[i]t is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed."

In *McNeely v. Frich*, 187 W.Va. 26, 415 S.E.2d 267 (1992), a medical malpractice case in which this Court reinstated a jury verdict in favor of the defendant doctor, we observed:

> An essential element of our judicial system is the right of a party, in most cases, to request a jury of his or her peers to render a verdict based upon the evidence and testimony presented. Because of the jury's unique ability to see the evidence and judge the demeanor of the witnesses on an impartial basis, a jury verdict is accorded great deference. It is the province of the jury to weigh the testimony and to resolve questions of fact when the testimony conflicts[.]

*Id.* at 29, 415 S.E.2d at 270. Accordingly, we have long held: "When a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it." Syl. Pt. 4, *Laslo v. Griffith*, 143 W.Va. 469, 102 S.E.2d 894 (1958). Therefore, "[w]hile syllabus point three of *Asbestos Litigation* authorizes a trial court to weigh the evidence in the context of granting a new trial, such authorization does not obviate the essential role of the jury in resolving conflicting evidence." *Shiel,* 203 W.Va. at 46, 506 S.E.2d at 83.

In syllabus point five of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), this Court set forth the methodology for assessing a jury's verdict:

> In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that

11

all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

We have further explained,

> When examining the record for the sufficiency of evidence to support the verdict, we view the evidence in the light most favorable to the prevailing party. We are not concerned with how we might decide the facts in the jury's stead, nor does our review favor the inferences and conflicts in the evidence helpful to the losing party.

*Dodrill v. Nationwide Mut. Ins. Co.*, 201 W.Va. 1, 11, 491 S.E.2d 1, 11 (1996).

The record presented to us reflects that this case was fairly tried. The jury was presented with a voluminous amount of photographs and videos of the subject properties along with three days of testimony. The witnesses were vigorously cross-examined by the opposing party, and the jury was clearly instructed by the court. Viewing the evidence in the light most favorable to Mr. Grimmett, the record shows the jury heard testimony that the Smiths' pond is located at the lowest point in the neighborhood and runoff from surrounding properties, in addition to Mr. Grimmett's, flows across the Smiths' land into their pond. Although the Smiths primarily sought damages for the removal of sediment from their pond, they never presented the jury with evidence establishing how much, if any, sediment accumulated in the pond as a result of Mr. Grimmett's development of his property. In that regard, Mr. Smith and his witness, Terry Smith, both testified the depth of the pond had

12

never been measured. While the jury was shown photographs and videos depicting a muddy pond, they were also presented with testimony and video of clear water with lily pads. Having carefully considered record in this case, we reach the same decision as the *McNeely* court:

> After reviewing all reasonable and legitimate inferences in the defendant's favor, we cannot conclude, as the trial court did, that the jury verdict for the defendant was "contrary to all credible evidence in this case." By affirming the trial judge's order setting aside the verdict in this case, we would be permitting the judge to intrude upon the exclusive province of the jury to weigh and decide questions of fact. We refuse to permit this intrusion where the facts do not warrant such an action.

*McNeely*, 187 W.Va. at 30, 415 S.E.2d at 271.[7]

---

[7]We note the September 23, 2014, order did not set forth the circuit court's basis for concluding the jury erred in its assessment of the evidence. The one-page order merely states the court found "the verdict returned by the jury before whom the issues were tried was against the clear weight of the evidence presented, is clearly wrong and will result in miscarriage of justice if allowed to stand." The importance of a thorough and detailed order cannot be overstated. As we have previously explained,

> Appellate courts, on review, rely heavily on the trial judge's order; the order is extremely important. The order often assists appellate courts in understanding what the trial court did and why, and good orders often rebut allegations made by appealing parties in briefs and arguments. If the lower tribunal is interested in having its decision affirmed, then the lower court should assist the appellate courts by providing comprehensive, well-reasoned orders. Submission of a comprehensive order assists an appellate court in finding a way to affirm the lower court's order.

*P.T.P., IV by P.T.P., III v. Bd. of Educ.*, 200 W.Va. 61, 65, 488 S.E.2d 61, 65 (1997).

13

**IV.  Conclusion**

For the reasons set forth above, the September 23, 2014, order of the Circuit Court of Wood County is reversed, and this case is remanded for entry of an order reinstating the jury's verdict.

Reversed and remanded.