# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Black Bear, LLP,**
**Defendant Below, Petitioner**

**vs)  No. 16-0232** (Wyoming County 13-C-145)

**Bobby G. Halsey and Janet Halsey,**
**Plaintiffs Below, Respondents**

**and**

**Bobby G. Halsey and Janet Halsey,**
**Plaintiffs Below, Petitioners**

**vs)  No. 16-0249** (Wyoming County 13-C-145)

**Black Bear, LLP,**
**Defendant Below, Respondent**

**FILED**

**December 12, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

These consolidated appeals[1] arise from a single circuit court case, Wyoming County No. 13-C-145, in which Plaintiffs Bobby G. Halsey and Janet Halsey brought a "deliberate intent" action pursuant to West Virginia Code § 23-4-2(d)(2)(ii)(A)-(E) (2005)[2] against Defendant Black

---

[1] The Court consolidated these appeals by order entered June 22, 2016.

[2] West Virginia Code § 23-4-2(d)(2)(ii)(A)-(E) (2005) provides as follows:

> The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:

> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
> (B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

(continued . . . )

1

Bear, LLP ("Black Bear"). Following a trial on the matter, a jury returned a verdict in Black Bear's favor on the ground that the Halseys failed to prove the fourth of the five elements of a deliberate intent action. Thereafter, the Halseys filed a motion to alter or amend the jury's verdict pursuant to Rule 59(e) of the Rules of Civil Procedure. By order entered December 2, 2015, the Circuit Court of Wyoming County granted the Halseys's Rule 59(e) motion, vacated the jury's verdict, and ordered a new trial.

Defendant Black Bear, by counsel William J. Hanna, Eric T. Frye, and Jason Holliday, appeals the December 2, 2015, order (No. 16-0232), and claims that, because the jury found that the Halseys failed to prove all of the elements of a deliberate intent action, the circuit court erred in vacating the judgment order on that verdict. The Halseys, by counsel Bernard E. Layne, III and James B. Lees, Jr., also appeal the December 2, 2015, order (No. 16-0249), and argue that the circuit court should have found that they proved all five deliberate intent elements at trial, entered judgment in their favor, and limited the new trial to damages only.

This case does not present new or significant questions of law. Moreover, the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the relevant standards of review, the parties' briefs in both appeals, and the record on appeal, we reverse the circuit court's December 2, 2015, order that vacated the jury's verdict, and remand the case with instructions to reinstate the judgment order. In light of this decision, we also find that the Halseys's appeal is moot. A memorandum decision pursuant to Rule 21(d) of the West Virginia Rules of Appellate Procedure is appropriate for these consolidated appeals given that the "limited circumstances" requirement is satisfied.

**Factual and Procedural Background**

---

(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one [§ 23-4-1], article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

In 2012, Plaintiff Bobby G. Halsey (the "plaintiff") was a maintenance worker at Defendant Black Bear's coal preparation plant in Wyoming County. At the plant, the plaintiff was tasked with welding, fabricating, pipe replacement, and cleaning. The plaintiff worked with David "Dewey" Conley, the plaintiff's supervisor; Plant Superintendent Randy Hatfield; and Damon England, another plant supervisor. The evidence in the record on appeal indicates that these men were considered a "very experienced crew" who "knew their jobs well[.]"

On May 6, 2012, the plaintiff was assigned to participate in the repair of the plant's Heavy Media Distribution Box (hereinafter "HMDB"), which had been leaking. To effectuate that repair, a fourteen-inch pipe and a six-inch pipe, which came down from the ceiling onto the top of the HMDB, had to be cut. Plant Superintendent Hatfield assigned this repair task to the plaintiff, Supervisor Conley, and Supervisor England. Superintendent Hatfield also asked Jeff Roberts, who worked on the night shift prior to the plaintiff's day shift, to begin work on the pipes.

During the night shift, Mr. Roberts completely cut through the base of the fourteen-inch pipe; therefore, that pipe[3] was no longer supported by the HMDB, but, instead, was supported only by a connecting clamp. Mr. Roberts also cut through part of the six-inch pipe before his shift ended. During the day shift, the plaintiff and Mr. Conley were instructed to continue the work on the pipes. However, given their knowledge and experience, they were not instructed on how to do that work. The plaintiff "tied up" the six-inch pipe prior to working on it. He then informed Supervisor Conley that the fourteen-inch pipe needed to be secured. Thereafter, Mr. Conley left the immediate area to retrieve a ladder and the "come-alongs" necessary to tie up the fourteen-inch pipe. While Mr. Conley was gone, the plaintiff stood directly underneath the fourteen-inch pipe and apparently placed his hand on it in an effort to measure it. At that point, the pipe came loose from the connecting clamp and fell onto the plaintiff. As a result, the plaintiff was seriously injured and permanently disabled.

Thereafter, the plaintiff and his wife filed the instant deliberate intent action pursuant to West Virginia Code § 23-4-2(d)(2)(ii) (2005).

The trial in this matter commenced on August 24, 2015. During the Halseys's case-in-chief, the plaintiff testified (1) that neither Supervisor Conley nor Supervisor English instructed him on how to accomplish the task of removing the pipes; (2) that he tied up the six-inch pipe before working on it and then turned to work on the fourteen-inch pipe; (3) that it was not necessary to stand under the fourteen-inch pipe while it was being tied up; (4) that he was not directed to stand underneath the fourteen-inch pipe; (5) that, when he stood under the fourteen-inch pipe, he knew it had not yet been tied up and that Supervisor Conley was retrieving a ladder and the come-alongs to tie up the pipe; and (6) that he stood under the pipe to begin working on it because he was "just trying to save time."

---

[3] In the appendix record, the 14-inch-diameter pipe is estimated to be 12 feet in length and to weigh anywhere from 150 to 400 pounds.

At the end of the Halseys's case-in-chief, the circuit court denied Black Bear's motion for judgment as a matter of law. Black Bear then rested its case without calling any witnesses, but renewed its motion for judgment as a matter of law. The circuit court again denied that motion.

On closing, the Halseys's counsel told the jury that it was not to consider any of the plaintiff's actions on the day of the accident. The circuit court then instructed the jury that Black Bear "may not assert [the plaintiff's] conduct as a defense." The circuit court also instructed the jury regarding the five statutory elements of a deliberate intent action. *See* n. 2.

The case was submitted to the jury on August 26, 2015, along with a verdict form that contained five special interrogatories that tracked each of the five statutory elements of West Virginia Code § 23-4-2(d)(2)(ii)(A)-(E) (2005). The jury was instructed to answer each special interrogatory in the affirmative or in the negative—that is, in the affirmative if the Halseys met the burden of proof regarding the statutory element, or in the negative if the Halseys did not meet the burden of proof regarding the statutory element. Interrogatory (4) on the verdict form, which is at issue in this appeal, read as follows: "Do you find it more likely than not that [Black Bear] nevertheless *intentionally* exposed [the plaintiff] to the specific unsafe working condition?" (Emphasis added.) During its deliberations, the jury sent the following question to the circuit court regarding Interrogatory (4): "Is the wording concerning the use of the word 'intentionally' mandatory? Meaning, do we have to consider it in the question? Is it permissible to leave it out?" With the agreement of counsel, the circuit court advised the jurors that they "must answer the question as posed in the special interrogatories, in the verdict form together with the instructions given by the Court."

The next day, following six hours of deliberations, the jury returned a verdict in favor of Black Bear. On the verdict form, the jury answered the questions regarding the first three elements, West Virginia Code § 23-4-2(d)(2)(ii)(A)-(C), in the affirmative and, therefore, found that the Halseys proved each.[4] However, the jury answered the interrogatory regarding the fourth

---

[4] Specifically, the jury answered the following three questions in the affirmative:

1. That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

2. That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

3. That the specific unsafe working condition was a violation of a federal safety statute, rule or regulation, whether cited or not, of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards of guidelines which reflect a consensus safety standard in the defendant's industry, which statute, rule

(continued . . . )

4

element, West Virginia Code § 23-4-2(d)(2)(ii)(D), in the negative and, therefore, found that the Halseys failed to prove that Black Bear intentionally exposed the plaintiff to the specific unsafe working condition.[5]

The circuit court entered its "Order of Entry of Judgment on Jury Verdict" (the "judgment order") on September 17, 2015, which reflected the jury's verdict in favor of Black Bear.

On September 24, 2015, the Halseys filed a motion to alter or amend the jury's verdict pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. Specifically, the Halseys asked the circuit court to vacate the judgment order, to grant judgment in their favor, and to order a new trial on damages only. In the alternative, the Halseys moved for a new trial on all matters pursuant to Rule 59(a) of the West Virginia Rules of Civil Procedure. In support of their motion, the Halseys argued that there was no evidence to support the jury's finding that the plaintiff was not intentionally exposed to the specific unsafe working condition. The Halseys also argued that once the jury found that the Halseys had proved the first three elements of the deliberate intent statute, West Virginia Code § 23-4-2(d)(2)(ii)(A)-(C), they were required to find, as a matter of law, that they had proved the fourth element as well, West Virginia Code § 23-4-2(d)(2)(ii)(D). On November 23, 2015, Black Bear objected to the Halseys's Rule 59(e) motion.

Following a hearing, the circuit court, by order entered December 2, 2015, granted the Halseys's motion, vacated the judgment order, and ordered a new trial on all matters. In rendering its decision, the circuit court relied primarily on the following excerpt from Superintendent Hatfield's testimony at trial, during which Superintendent Hatfield testified, in essence, that—*in hindsight*—the plaintiff was sent to a hazardous worksite which posed a significant risk of injury.

> PLAINTIFFS'S COUNSEL: So you've got a 3[00] to 400-pound piece of this machinery hanging there from a Morris coupling, just dangling there, basically hanging from a band aid, correct?
>
> MR. HATFIELD: Yes, sir.
>
> PLAINTIFFS'S COUNSEL: That's not a very good worksite to send a worker into; is it?

---

or regulation or standard was specifically applicable to the particular work and working condition involved.

[5] Due to their negative response to the fourth interrogatory, the jury did not answer the fifth interrogatory regarding West Virginia Code § 23-4-2(d)(2)(ii)(E), which asked whether the jury found it more likely than not that the plaintiff suffered a serious injury as a direct and proximate result of the unsafe working condition.

MR. HATFIELD: I wouldn't think.

PLAINTIFFS'S COUNSEL: But somebody on behalf of that company made the intentional decision to send [the plaintiff] into that worksite. Isn't that true?

MR. HATFIELD: Ah . . . no, I can't agree with that statement. No one told him to go into an unsafe worksite.

PLAINTIFFS'S COUNSEL: Nobody told him to go into the worksite? So [the plaintiff] just decided on his own to go do that job?

MR. HATFIELD: No. All three of these guys were there to do that job.

PLAINTIFFS'S COUNSEL: Because the company told them to do the job; correct?

MR. HATFIELD: Yes, I mean that's what we were there for, yeah.

PLAINTIFFS'S COUNSEL: I understand that. So would you at least agree that . . . [the plaintiff] was in this worksite because the company essentially told him to go work on this job?

MR. HATFIELD: Yes, we told him that.

PLAINTIFFS'S COUNSEL: Okay. And *in hindsight* the place that he was sent to go was *a hazardous worksite which posed a significant risk of injury*?

MR. HATFIELD: *Sure. I mean, yes*.

(Emphasis added.)

Based on this testimony, the circuit court found that the jury verdict was not supported by the evidence at trial. The circuit court further found "there was no material fact at issue with respect to the fourth element of [West Virginia Code § 23-4-2(d)(2)(ii)] for the jury to have considered" because the evidence showed that the plaintiff "was in a particular workplace doing a specific job because he had been intentionally directed to be at that workplace and do that particular job by [Black Bear]." The circuit court concluded that, "[o]nce the jury determined the plaintiff had proven the first three (3) elements of the deliberate intent statute . . . there were no material facts in dispute or at issue relevant to the fourth element of the deliberate intent statute."[6]

---

[6] With regard to the fifth of the five deliberate intent elements, West Virginia Code § 23-4-2(d)(2)(ii)(E), which the jury did not address, the circuit court found that there was no (continued . . . )

Both Black Bear and the Halseys now appeal the December 2, 2015, order that granted the Halseys's Rule 59(e) motion.

**Discussion**

> The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W.Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co*., 204 W.Va. 430, 431, 513 S.E.2d 657, 658 (1998).

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 641, 535 S.E.2d 484, 485 (2000). "Under Rule 59(e), the reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Mey v. Pep Boys-Manny, Moe & Jack*, 228 W.Va. 48, 57, 717 S.E.2d 235, 244 (2011).

In its appeal, Black Bear argues that, because the jury found that the Halseys failed to prove all five elements of a deliberate intent action, the circuit court erred in vacating the judgment order and in ordering a new trial.[7] In response, the Halseys argue that the jury's negative answer to Interrogatory 4 (regarding West Virginia Code § 23-4-2(d)(2)(ii)(D)) was "factually impossible" because they presented evidence at trial that proved Black Bear intentionally exposed the plaintiff to the specific unsafe working condition.

We begin our analysis by addressing Black Bear's claim that the circuit court abused its discretion in finding that, as a matter of law, "[o]nce the jury determined the plaintiff had proven the first three (3) elements of the deliberate intent statute [W.Va. Code § 23-4-2(d)(2)(ii)(A)-(E)] . . . there were no material facts in dispute or at issue relevant to the fourth element of the

---

"material factual dispute with respect to [the] fifth element" because the plaintiff "suffered serious and life-threatening injuries in the accident."

[7] Alternatively, Black Bear argues that, even if the circuit court did not err in vacating the judgment order, it erred by precluding Black Bear from presenting and arguing evidence relating to the plaintiff's conduct immediately prior to the accident at trial. However, because we find that the circuit court erred in vacating the judgment order, we need not address this assignment of error further.

deliberate intent statute [W.Va. Code § 23-4-2(d)(2)(ii)(D)]." We agree with Black Bear's claim that the circuit court erred.

First, the express language of West Virginia Code § 23-4-2(d)(2)(ii)(D) plainly shows that the legislature intended that that each and every one of the five elements be proven individually. That express language provides "[t]hat *notwithstanding the existence of the facts set forth in subparagraphs (A) through (C)*, inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition . . . ." (Emphasis added). W.Va. Code § 23-4-2(d)(2)(ii)(D). *See Coleman Estate ex rel. Coleman v. R.M. Logging, Inc.*, 226 W.Va. 199, 203, 700 S.E.2d 168, 172 (2010).

Moreover, nowhere in our jurisprudence do we find any law that allows a plaintiff who has proved only the first three elements of a deliberate intent action to prevail in such an action. To the contrary, we have repeatedly held that a deliberate intent plaintiff must successfully demonstrate evidence in support of each of the five elements. *See Master Mech. Insulation, Inc. v. Simmons*, 232 W.Va. 581, 588, 753 S.E.2d 79, 86 (2013) (stating that "[a]bsent successful demonstration of all five of the statutory elements provided in West Virginia Code § 23-4-2(d)(2)(ii)(A)-(E), an employee cannot recover under a theory of 'deliberate intent.'"); Syl. Pt. 2, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 271, 406 S.E.2d 700, 702 (1991) ("To establish 'deliberate intention' in an action under W.Va. Code § 23–4–2(c)(2)(ii) (1983), a plaintiff or cross-claimant must offer evidence to prove each of the five specific statutory requirements.").

At trial, the jury heard the plaintiff concede that no one required or directed him to stand directly underneath the fourteen-inch pipe; that—when he chose to stand under the pipe—he knew it was secured only by a coupling and that Mr. Conley was retrieving the implements necessary to secure the pipe; and that, nevertheless, he began working on the pipe because he was "just trying to save time." The jury was then properly instructed on the law. Those instructions included the following instruction regarding West Virginia Code § 23-4-2(d)(2)(ii)(D) (2005):

> [T]he element of intentional exposure is not satisfied if the exposure of the employer was inadvertent, careless, indifferent or even negligent. There must be evidence which shows that Black Bear Processing required or directed [the plaintiff] to perform a task despite actual knowledge of the specific unsafe working condition and the high degree of risk and strong probability of serious injury.

Thereafter, during their deliberations, the jury specifically asked the circuit court, "Is the wording concerning the use of the word 'intentionally' mandatory? Meaning, do we have to consider it in the question? Is it permissible to leave it out?" Having heard the circuit court's answer and, having clearly considered the "intentional exposure" requirement, the jury found that the Halseys did not successfully demonstrate evidence in support of the fourth element, West Virginia Code § 23-4-2(d)(2)(ii)(D) (2005).

As for Superintendent Hatfield's testimony, upon which the circuit court relied in vacating the jury's verdict, he agreed that "in hindsight," the plaintiff was sent to a hazardous

worksite that posed a significant risk of injury. To establish intentional exposure pursuant to West Virginia Code § 23-4-2(d)(2)(ii)(D), there "must be some evidence [] that with conscious awareness of the unsafe working condition . . . an employee was directed to continue working in that same harmful environment." *Ramey v. Contractor Enters.*, 225 W.Va. 424, 431, 693 S.E.2d 789, 796 (2010) (quoting *Tolley v. ACF Industries, Inc.*, 212 W.Va. 548, 558, 575 S.E.2d 158, 168 (2002) (emphasis added). Importantly, the employer must have such "conscious awareness" of the unsafe condition *prior* to directing the employee to act. *Id.*, 212 W.Va. at 558, 575 S.E.2d at 168 (emphasis added). Superintendent Hatfield's testimony does not support the circuit court's finding that Black Bear had conscious awareness of the unsafe condition *prior* to directing the plaintiff to act, because that conscious awareness came about only "in hindsight." Thus, the circuit court erred in relying on Superintendent Hatfield's testimony as a basis for vacating the order of judgment in this case.

We have said, "'[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.' Syl. Pt. 4, *Sanders v. Georgia-Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976)." Syl. Pt. 4, *Shiel v. Ryu*, 203 W.Va. 40, 42, 506 S.E.2d 77, 79 (1998). Here, the circuit court clearly misapprehended both the law and the evidence in this case. Therefore, we find that the circuit court erred in granting the Halseys's Rule 59(e) motion, in vacating the judgment order, and in ordering a new trial on the merits. We thus find that the Halseys's appeal is moot in light of our decision in Black Bear's appeal. "'Where the trial court improperly sets aside a verdict of a jury, such verdict will be reinstated by this Court and judgment rendered thereon.' Syllabus point 4, *Bronson v. Riffe*, 148 W.Va. 362, 135 S.E.2d 244 (1964)." Syl. Pt. 2, *Neely v. Belk Inc.*, 222 W.Va. 560, 562, 668 S.E.2d 189, 191 (2008).

Accordingly, for the foregoing reasons, we vacate the circuit court's July 20, 2015, order granting the Halseys's Rule 59(e) motion; remand the case to the circuit court with instructions to reinstate the September 17, 2015, "Order of Entry of Judgment on Jury Verdict"; and dismiss as moot the Halseys's appeal.

Reversed and remanded with instructions, in part, and dismissed, as moot, in part.


**ISSUED:** December 12, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II