# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Russell S.,**
**Petitioner Below, Petitioner**

**vs)  No. 17-0043**  (Preston County 07-C-35)

**Ralph Terry, Acting Warden,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**April 6, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Russell S., by counsel Justin Gregory, appeals the Circuit Court of Preston County's December 6, 2016, order that denied his petition for a writ of habeas corpus. Ralph Terry, Acting Warden, Mt. Olive Correctional Complex,[1] by counsel Robert L. Hogan, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 2, 1987, petitioner and his co-defendant were indicted on numerous counts related to the abduction and sexual assault of a fifteen-year-old girl. The victim was waiting for a friend at a gas station in Morgantown, West Virginia, when the pair drove up to her and asked if she needed a ride. When the victim declined, they drove away. The pair then drove back and one of the men jumped out of the car and pulled her in. The victim screamed and attempted to fight them off but petitioner had a gun and threatened to kill her. At about this time, the victim's friend arrived at the gas station and the victim screamed out to him for help. The pair drove the victim to an empty house in Preston County where petitioner sexually assaulted her four times. Meanwhile, based upon the friend's account of what he witnessed, the victim's mother filed an abducted persons report.

---

[1] Since the filing of the petition in this case, the warden at Mt. Olive Correctional Complex has changed, and the acting warden is now Ralph Terry. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

1

The next day, petitioner and his co-defendant dropped the victim off about fifteen minutes away from her home where she was eventually discovered by a family friend. She was taken to a hospital for a medical examination. The examining physician found that the victim's hymenal ring had some small tears and was not intact, indicating that the victim had been newly penetrated. The physician found no evidence of semen or sperm. She used dry Q-Tip smears on the victim's cervix, vagina, rectum, and oral cavity, and took samples of her blood and saliva. The police collected the smears, a hospital sheet, and clothing the victim was wearing including her underwear, jacket, shoes, and jeans. After the victim led the police to the crime scene, they collected cigarette filters and four couch cushions from the abandoned house.

During discovery, the State disclosed that former West Virginia State Trooper Fred Zain performed a forensic examination for blood and seminal fluid from evidence recovered during the investigation. In a June 2, 1987, report, Zain reported that although no seminal fluid or spermatozoa were identified from the specimens, he found "[s]tains from human blood . . . on the panties, two (2) cushions, hospital sheet, blue jeans and jacket." Thereafter, petitioner's blood sample was submitted for comparison purposes and tested. Zain noted in a September 15, 1987, report that genetic markers from the collected evidence "were consistent with genetic markers of [the victim] and not . . . [petitioner]."

Petitioner's trial began on September 21, 1987. Although the victim testified that petitioner had ejaculated during the assault, Zain testified consistent with his report that no seminal fluid or spermatozoa was found on the sex crime evidence kit. He also explained that there were different reasons why sperm may not be present: (1) intercourse may not have occurred; (2) intercourse may have occurred but the male did not ejaculate; (3) a prophylactic may have been used; and (4) the sperm may have been flushed out of the vagina between the time of intercourse and testing. For his part, petitioner testified that he did not engage in any sexual activity with the victim.

The jury found petitioner guilty of kidnapping, one count of first-degree sexual abuse, and four counts of first-degree sexual assault. The circuit court sentenced him to an effective sentence of life with mercy on the kidnapping charge and thirty to fifty years on the remaining charges.

Petitioner filed a direct appeal of his conviction with this Court. The appeal was refused by order entered on June 20, 1998. Thereafter, petitioner filed three petitions for writ of habeas corpus, all of which were denied. Petitioner's appeals of the same were also denied.

Petitioner, pro se, filed the present petition for writ of habeas corpus on February 14, 2007. Counsel was appointed and an amended petition was filed on April 3, 2009, alleging ineffective assistance of counsel. Petitioner also filed a motion for post-conviction DNA testing of the preserved evidence. *See* W.Va. Code § 15-2B-14.

On May 13, 2009, respondent filed a motion to dismiss on the grounds of res judicata. A hearing thereon and on petitioner's motion for DNA testing was conducted on May 14, 2009. Petitioner thereafter filed a list of additional preserved items to be tested.

In a September 23, 2010, opinion letter regarding respondent's motion to dismiss, the circuit court granted the motion with the exception of petitioner's claim for ineffective assistance of prior habeas counsel. The court also granted petitioner's motion for DNA testing and ordered that the evidence described in petitioner's list of additional items be subject to short tandem repeat (STR) DNA testing by a DNA Forensic Laboratory, and the results fully disclosed to all parties. The parties eventually entered into an Agreed Order for DNA Testing Protocol, which directed NMS Labs in Willow Grove, Pennsylvania, to perform the DNA analysis on the evidence.

Thereafter, on August 18, 2014, petitioner filed a brief in support of this habeas petition in which he argued that trial counsel was ineffective in failing to request advanced DNA testing, which would have proven that a third party committed the alleged crimes, and in failing to recognize the importance of testimony by Trooper Zain and its impact on exculpatory evidence. Petitioner also argued that trial counsel was ineffective in failing to communicate to him a proposed plea offer that, in exchange for a guilty plea to sexual assault, would have effectively concluded his sentence in approximately thirty years.

On October 16, 2014, the circuit court conducted an omnibus hearing on the present habeas petition, at which petitioner called his trial counsel as his only witness. Trial counsel, Edwin Runner, testified that, to the best of his recollection, the plea offer made by the State would have required petitioner to leave prison "in a pine box;" that he communicated to petitioner the legal ramifications and dangers involved in accepting the plea offer; and that he was unaware of a plea offer that would have subjected petitioner to incarceration for only thirty years. Following Mr. Runner's testimony, the circuit court continued the hearing and, after DNA testing and a resulting report were completed, a final omnibus hearing was scheduled for February 23, 2016. The court conducted a hearing at which the DNA testing report was submitted into evidence. The court subsequently advised all parties that it wished to hear evidence concerning the DNA test results. On September 26, 2016, the omnibus hearing resumed, at which time Thomas Walsh, who performed the DNA testing on the preserved evidence and wrote the resulting report, testified.

By order entered on December 6, 2016, the circuit court denied petitioner's request for habeas relief. First, the circuit court found that petitioner failed to prove that his trial counsel was ineffective in failing to convey the plea offer made by the assistant prosecuting attorney. The circuit court found that this issue was raised and resolved in petitioner's first habeas petition and that the issue is technically barred under the principles of res judicata and *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981). The court also addressed the merits of petitioner's ineffective assistance claim, finding that, according to the testimony of petitioner's trial counsel, which the court found to be credible, "the plea bargain offer was nominal, or, in his words, for [petitioner] to leave prison 'in a pine box.' He testified that anything that was conveyed to him was thereafter conveyed to [petitioner]." The circuit court concluded that petitioner failed to prove that the plea offer, whatever its contents, was not conveyed to him.

Regarding petitioner's remaining claim that the more recent DNA testing exonerated him, the circuit court disagreed with petitioner's interpretation of the DNA testing report, finding that, in fact, this evidence supported "the State's theory (which a jury found was proven beyond a

reasonable doubt) that [petitioner] and [his co-defendant] engaged in sexual relations with the victim." Petitioner now appeals the circuit court's December 6, 2016, order denying his request for habeas relief.

Our review of the circuit court's order denying petitioner's petition for a writ of habeas corpus is governed by the following standard:

"In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).

We first address petitioner's ineffective assistance of counsel claim, which is based upon his trial counsel's alleged failure to convey a plea offer that would have limited petitioner's incarceration to a period of thirty years. Petitioner argues that the circuit court erred in concluding that this claim is barred by the doctrine of res judicata.

This Court has made clear that, "[a]t subsequent habeas corpus hearings, any grounds raised at a prior habeas corpus hearing are considered 'fully adjudicated' and need not be addressed by the circuit court." *Markley v. Coleman*, 215 W. Va. 729, 733, 601 S.E.2d 49, 53 (2004). As we held in syllabus point four of *Losh v. McKenzie*,

[a] prior omnibus habeas corpus hearing is *res judicata* as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing; newly discovered evidence; or, a change in the law, favorable to the applicant, which may be applied retroactively.

166 W. Va. 762, 277 S.E.2d 606 (1981).

According to the circuit court's February 28, 1992, order that denied petitioner's first petition for writ of habeas corpus, petitioner "contend[ed] [trial counsel] was ineffective because he failed to enter plea negotiations with the Prosecuting [A]ttorney's [O]ffice or if he did enter such negotiations, he failed to relay any offer to the [petitioner]." In its order, the court noted that the prosecuting attorney testified at the omnibus hearing that she offered trial counsel a plea to two counts of first degree sexual assault "in order to insure [petitioner] would serve a minimum of thirty (30) years in prison, close to a life sentence[;]" that this "nominal plea offer" was made "because of the extremely serious nature of the crime and the strong evidence the State had against [petitioner][;]" and that trial counsel had "argued with her over the offer because it was not much of an offer, and that he was on his way over to the jail and would discuss it with [petitioner]." According to the circuit court's order, the prosecuting attorney "spoke with [trial counsel] later and recalled [him] saying [petitioner] thought he could do better at trial, and the

defense rejected the offer." The circuit court concluded that trial counsel "met with [petitioner] several times and discussed numerous aspects of the case, and it is reasonable to infer and the [c]ourt concludes that they discussed the plea offer and that [petitioner] refused it[,] deciding he would get less time if he went to trial."

In the present appeal, petitioner acknowledges that he has had prior opportunities to raise the issue of whether the plea offer was conveyed to him by trial counsel. Nonetheless, he argues that the issue was not "fairly and fully addressed" with the effective assistance of counsel until the omnibus hearing that was held in connection with the current habeas petition. Therefore, he argues, the principles of res judicata do not apply. We find no error.

In the circuit court's order denying petitioner's first petition for habeas corpus, the court found that the prosecuting attorney offered petitioner a guilty plea to two counts of first degree sexual assault so as to ensure that petitioner would be incarcerated for a minimum of thirty years. The court further found that, when the plea offer was made, petitioner's counsel indicated that he was on his way to the jail where he would discuss the offer with petitioner. Petitioner's counsel later informed the prosecuting attorney that petitioner rejected the offer because he believed he would get a more favorable result at trial. Petitioner does not now dispute the veracity of the prosecuting attorney's testimony nor does he meaningfully address the findings in the 1992 circuit court order. We conclude that the circuit court's order denying petitioner's first habeas petition clearly reflects that the issue of whether petitioner was made aware of the plea offer that would have subjected him to a maximum of thirty years in prison was fully adjudicated and the circuit court in the present habeas matter did not abuse its discretion in concluding that the issue is now barred under the principles of res judicata. Therefore, we find that petitioner's claim of ineffective assistance of counsel based upon his trial counsel's failure to convey the plea offer is without merit.[2]

Next, petitioner argues that the circuit court erred in finding that the DNA testing conducted in 2015 constituted inculpatory evidence and did not exonerate him from the crimes for which he was convicted. Petitioner argues that the test results showed that he was excluded as a contributor of all but one DNA profile and that this evidence satisfies all of the requirements for granting a new trial on the ground of newly discovered evidence. *See* Syllabus, *State v. Frazier*, 162 W. Va. 935, 253 S.E.2d 534 (1979).

The circuit court's order denying habeas relief does not indicate that petitioner requested a new trial based upon the new DNA test results[3]; instead, petitioner requested immediate release

---

[2] Given our conclusion that the principles of res judicata apply, we need not address petitioner's second assignment of error that the circuit court erred in finding that petitioner failed to prove that trial counsel was ineffective in failing to convey the plea offer.

[3] Petitioner does not represent that he filed a motion for a new trial based upon the new DNA results. Consequently, this argument is waived. *See* Syl. Pt. 5, *State v. Day*, 225 W. Va. 794, 696 S.E.2d 310 (2010) ("""'In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from (continued . . .)

from prison[4] because he believed the results exonerated him from the crimes for which he was convicted. The circuit court, relying on the report and testimony of Thomas Walsh of NMS Laboratories, recognized that the test results excluded petitioner as a contributor to DNA found on all but one item that was tested.[5] The test results revealed that petitioner's DNA was found on a sample cutting from the crotch of the victim's jeans. Specifically, Mr. Walsh reported that he found "[m]ixed partial autosomal-STR DNA profile"[6] on the jeans sample representing a mixture of at least three contributors, with the victim being excluded as a contributor. As explained by the circuit court in its order,

> [t]he methodology for the testing was "differential extraction." According to Mr. Walsh's report, '[d]ifferential extraction is a means of separating semen stains into two fractions, based on structural differences between spermatozoa and other types of cells. Differential extraction of [the victim's jeans] produced two fractions each[,]' . . . which included [the cutting from the crotch of the jeans], the sample that produced the results making it one million times more likely that the semen originated from [petitioner].

Based upon Mr. Walsh's report and testimony, the circuit court ultimately concluded that this evidence does not exonerate petitioner but, rather, supports the State's theory that petitioner engaged in sexual relations with the victim. Petitioner does not challenge the validity of the DNA testing results, including Mr. Walsh's conclusion that it is "one million times more likely" that the semen found on the crotch of the victim's jeans is petitioner's. We conclude, therefore, that the circuit court did not abuse its discretion in denying petitioner's request for habeas relief.

For the foregoing reasons, we affirm.

---

which the appeal has been taken.' Syllabus Point 1, *Mowery v. Hitt*, 155 W.Va. 103[, 181 S.E.2d 334] (1971)." Syl. pt. 1, *Shackleford v. Catlett*, 161 W.Va. 568, 244 S.E.2d 327 (1978).' Syl. Pt. 3, *Voelker v. Frederick Business Properties Co.*, 195 W.Va. 246, 465 S.E.2d 246 (1995).").

[4] The record on appeal does not include a copy of this pleading.

[5] According to the circuit court's order,

> the term "exclusion," as used in [Mr. Walsh's] report, means that the subject's DNA is either not present, or that there was not enough information obtained from the sample to make a positive comparison. Thus, simply because [petitioner] was "excluded" as a contributor to the DNA found on most of the exhibits, it did not necessarily mean that his DNA was not present. Instead, it could mean that it was not there, or that there was not enough information obtained from the sample to make a positive identification.

[6] According to Mr. Welsh, "autosomal-STR DNA (A-STR) is more specific than Y-STR DNA. . . . A-STR is a more unique profile, with only identical twins sharing an A-STR profile as opposed to all males from the same paternal line sharing a Y-STR profile."

Affirmed.

**ISSUED:** April 6, 2018

**CONCURRED IN BY:**

Chief Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker